STATE of Minnesota, Respondent,

v.

Timothy Allen OLSEN, Appellant.

No. 48799.

Supreme Court of Minnesota.

July 20, 1979.

William M. Mahlum, St. Paul, for appellant.

Warren Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., and David W. McKenna, Spec. Asst. Atty. Gen., St. Paul, Robert W. Kelly, County Atty., and Stephen L. Muehlberg, Asst. County Atty., Stillwater, for respondent.

Heard by SHERAN, C. J., PETERSON, and TODD, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

Defendant, Timothy Allen Olsen, appeals from his conviction of possession of more than 1.5 ounces of marijuana, possession of hashish oil, manufacture of hashish oil, and possession of hashish oil with intent to sell or distribute it, contending that the district court erred in denying his motion to suppress evidence seized from his home, garage, and yard, following a warrantless investigation of a fire on his premises. We affirm.

Shortly before 1 a. m. on August 3, 1977, a fire at defendant's home in Afton, Minnesota, was reported to the Washington County Sheriff's office. Volunteer firemen and Sergeant Larry Simon of the Washington County Sheriff's office were called to the scene. Defendant's hands were burned, and he was immediately taken by ambulance to St. Paul Ramsey Hospital for treatment. While defendant was in the ambulance he was asked by the rescue unit, at the direction of Simon, to name someone to secure his house. Defendant named Anthony Bova, who was then called by the sheriff's dispatcher. Simon then returned to the sheriff's office, after directing the firemen to remain at the scene until Bova arrived to secure the premises.

Bova arrived at defendant's house shortly before 2 a. m. By that time the fire, which had been confined to the garage, had been extinguished; the firemen and tankers left about 10 minutes after Bova arrived.

Shortly after 2 a. m. Simon was notified that firemen had seen chemicals in defendant's garage, which they thought could possibly ignite. The firemen also reported having seen ether in the garage, various equipment, and what they thought were marijuana seeds. In response to these reports, Simon asked Assistant State Fire Marshal Michael Reber to go to the fire

scene. He also requested that an investigator be sent out from the Washington County Sheriff's office crime lab, because of the reported ether and narcotics at the scene. The sheriff's office dispatcher contacted Sergeants Arleigh Cook and Robert Ellert to fill this request. Robert Palmquist, a fireman and deputy sheriff, was also directed to go to the scene to take photographs for the fire department.

Palmquist arrived to take pictures about 15 minutes after the firemen had departed. By this time, Anthony Bova had locked the house and had almost completely closed the garage. When Palmquist identified himself and told Bova that he was investigating the fire and had to look around inside the garage, Bova opened the door. Palmquist then entered the garage and proceeded to take photographs.

Sergeant Simon returned to the scene shortly before 3 a. m., and Assistant Fire Marshal Reber joined him shortly thereafter. Reber examined the inside of the garage and various items that had been moved out of the garage by the firemen in the course of extinguishing the fire.

Sergeants Cook and Ellert arrived at about 3:40 a. m. and 4 a. m., respectively. Simon and Reber informed Cook that, while fighting the fire, the firemen had discovered a large amount of strange apparatus consisting of chemical laboratory paraphernalia, a large cooking vat, drums containing unknown substances, cans of ether, cylinders of gas, rubber tubing, and a large quantity of vegetable matter and seeds. Cook then examined the area himself, both inside and outside the garage.

After about a half hour, Sergeant Cook left the scene to go to Stillwater, where he gathered more information from narcotics investigators. Bova then closed the garage, and Reber, Simon, and Ellert held it as a fire scene until Cook returned at about 8:30 a. m., after having obtained a search warrant.

The warrant was then executed, and the officers seized controlled substances, weapons, devices for measuring and packaging controlled substances, laboratory equipment, and chemicals.

Three issues are raised by this appeal: (1) Was the warrantless search of defendant's premises to determine the cause of the fire reasonable under the Fourth and Fourteenth Amendments to the United States Constitution, and under art. 1, § 10, of the Minnesota Constitution? (2) Was the warrantless fire investigation a pretext for the investigation of another crime? (3) Could Anthony Bova effectively consent to a search of defendant's garage?

1. Defendant complains that the search of his premises to determine the cause of the fire was unreasonable because it was initiated after the fire had been extinguished and all firefighting personnel had left the scene. The recent case of *Michigan v. Tyler,* 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), is dispositive of this issue.

In *Tyler,* the fire chief, whose duty it was to determine the causes of fires, arrived at the fire scene at 2 a. m., as firemen were just watering down the remainder of the fire. After being informed of and examining two containers of flammable liquid, the fire chief called a police detective to assist in determining if the fire had been caused by arson. The detective arrived at about 3:30 a. m.; he took several pictures, but then abandoned his efforts because of lingering smoke and steam. By 4 a. m. the firefighters had departed; the chief and the detective took the two containers and also left. The chief returned to the fire scene at about 8 a. m., with an assistant whose duty it was to determine the origin of all fires within the township. They left after a brief examination of the scene, but the assistant then returned with the detective at about 9 a. m. During the investigation that followed, the detective was able to find evidence of arson that had not been visible during his earlier search because of the steam and darkness. Beginning about 26 days after the fire, a member of the Michigan State Police Arson Section made several visits to the scene, taking photographs and obtaining substantial physical evidence of arson.

Tyler and another were convicted in a Michigan trial court of conspiracy to burn real property and of other crimes. The Michigan Supreme Court reversed, holding that the warrantless searches described above were unconstitutional and that the evidence secured was therefore inadmissible; a new trial was ordered. The United States Supreme Court affirmed, but disagreed in some important particulars with the holding of the Michigan court.

By the way of background, the Supreme Court reemphasized the fundamental tenet that a search without a warrant is unreasonable:

> " * * * As a general matter, then, official entries to investigate the cause of a fire must adhere to the warrant procedures of the Fourth Amendment. * * Since all the entries in this case were 'without proper consent' and were not 'authorized by a valid search warrant,' each one is illegal unless it falls within one of the 'certain carefully defined classes of cases' for which warrants are not mandatory." 436 U.S. 508, 98 S.Ct. 1949, 56 L.Ed.2d 497 (quoting *Camara v. Municipal Court,* 387 U.S. 523, 528, 87 S.Ct. 1727, 1731, 18 L.Ed.2d 930, 935 [1967]).

The court then examined each of the searches involved to determine whether warrants were mandatory. First, the court determined with no difficulty that the entry of the firemen to extinguish the fire and the removal of the containers of flammable liquid by the fire chief did not violate the Fourth and Fourteenth Amendments. The court reasoned that the burning building presented "an exigency of sufficient proportions to render a warrantless entry 'reasonable.'" 436 U.S. 509, 98 S.Ct. 1950, 56 L.Ed.2d 498.

Second, the court found unrealistically narrow the view that "the exigency justifying a warrantless entry to fight a fire ends, and the need to get a warrant begins, with the dousing of the last flame." 436 U.S. 510, 98 S.Ct. 1950, 56 L.Ed.2d 498. Stating that fire officials are charged with finding the causes of fires as well as extinguishing them and that prompt investigation may be necessary to prevent recurrence, the court held that officials may remain at the scene to investigate the cause of a fire for a reasonable time after it has been extinguished without having obtained a warrant. The court expressly recognized that what is reasonable will depend on the particular circumstances involved.

Third, the court held that the early morning reentries constituted a continuation of the first search and that the lack of a warrant therefore did not invalidate the search or seizures. In reaching this result, the court reasoned that the first investigation had been hindered by darkness and smoke and that little purpose would have been served by the investigators' remaining in the building until daylight.

Finally, the *Tyler* court held that the warrantless entries occurring weeks after the fire " * * * were clearly detached from the initial exigency * * *" and were therefore invalid. 436 U.S. 511, 98 S.Ct. 1951, 56 L.Ed.2d 499.

■ Examining the instant matter in light of *Tyler,* it must be noted that here, unlike *Tyler,* no investigation was initiated while firefighters were still on the scene. Thus the question is not whether the officials remained to investigate for a reasonable time but, rather, whether the subsequent warrantless entries were justified by the same exigencies that would have justified their having remained on the scene in the first instance. We hold that they were. Prompt investigation is necessary for public safety, to help prevent a recurrence of the fire. Such investigation is especially appropriate in cases such as the one before us, where various chemicals have been seen and smelled by firefighters. Prompt investigation also minimizes the risk that evidence of the origin of the fire will be destroyed, either accidentally or intentionally. Furthermore, a prompt investigation interferes the least "with the privacy and the recovery efforts of the victims." 436 U.S. 510, 98 S.Ct. 1950, 56 L.Ed.2d 499.

Sergeant Palmquist began the investigation by taking photographs of the fire scene about 15 minutes after the last fire truck had departed. Fire Marshall Reber arrived and began his investigation about 1 hour later. This time lapse is certainly not of such magnitude as to diminish the validity or the necessity of making a prompt investigation. Nor did the slight delay in beginning the search in any way increase the threat of interference with the privacy of the victims. In *Tyler* the court stated that "[l]ittle purpose would have been served by [the investigators'] remaining in the building [between 4 a. m. and 8 a. m.], except to remove any doubt about the legality of the warrantless search and seizure later that same morning." 436 U.S. 511, 98 S.Ct. 1951, 56 L.Ed.2d 499. Similarly, little purpose would have been served by the firefighters having remained on the scene an extra 15 minutes until Palmquist arrived to begin the fire investigation.

■ 2. Defendant next complains that the inquiry into the cause of the fire was only a pretext for a warrantless investigation of another crime. As discussed above, however, a prompt warrantless investigation into the origin of the fire was reasonable and justified in this case on a number of grounds, not the least of which was the reported presence of various possibly flammable chemicals. There is nothing in the record to indicate that the investigation, including the photographs taken by Palmquist and the inspection of the premises by Reber, was not routine under the circumstances. There was testimony that it was customary that the representative of the fire marshal be accompanied by a deputy from the sheriff's office. Furthermore, such an investigation into the cause of a fire is authorized by statute. Minn.St. 299F.04.

■ On the other hand, testimony at the omnibus hearings and excerpts from tape recordings of the sheriff's dispatcher's conversations on the night of the fire make clear that more than a fire was being investigated. Sergeants Cook and Ellert were specifically called to the scene because of the reported presence of narcotics. Moreover, Cook admitted that he did not come to investigate the fire, and Ellert stated at the time of the investigation that a search warrant was needed. Respondent has suggested no exigency to justify this warrantless investigation into criminal narcotics activity. Absent exigent circumstances, such a search is unreasonable and therefore unconstitutional.

This illegal conduct, however, does not warrant reversal of defendant's conviction in the instant matter. The information obtained by the narcotics investigators was cumulative to that obtained by firefighters and fire investigators, who were legally on the premises. See, *State v. Sorenson,* 270 Minn. 186, 200, 134 N.W.2d 115, 125 (1965). The observations of Reber and the firemen were alone sufficient to support the application for the search warrant, which was issued after daylight on the morning of the fire.

In conclusion, the fire investigation was valid, though warrantless, and was not a pretext for a criminal search; the warrantless narcotics investigation that was simultaneously carried out, however, was not justified and therefore was illegal. Nevertheless, because the evidence that was gathered by the narcotics investigators was cumulative, the court's error in failing to exclude it is not reversible.

3. Because we conclude that the warrantless fire investigation was reasonable under the facts of this case and was not a mere pretext for an illegal narcotics investigation, we need not determine whether Anthony Bova could effectively consent to a search of defendant's garage.

Affirmed.