[No. 52685-1.   En Banc.   May 14, 1987.]

THE STATE OF WASHINGTON, *Respondent*, v.
KEVIN LEE BELL, *Petitioner*.

*Roger A. Hunko,* for petitioner.

C. *Danny Clem, Prosecuting Attorney*, and *Anthony C. Otto, Deputy*, for respondent.

DURHAM, J.—Sheriff's officers seized material from a marijuana–growing operation without a warrant after it had been discovered by fire fighters at the scene of a fire. Kevin Bell was charged with possession of marijuana, RCW 69.50.401(d), but the case was dismissed after the trial court suppressed the evidence. The Court of Appeals reversed, holding that the warrantless seizure did not violate the state and federal constitutions. We affirm the Court of Appeals and remand the case for trial.

On September 30, 1983, a fire broke out at a house rented by Kevin Bell. Kitsap County Deputy Sheriff Clarke noticed the blaze and called the fire department. Fire fighters arrived at the scene and removed a wood stove, the apparent cause of the fire. The fire had charred one wall from floor to ceiling. As part of common practice, two fire fighters were sent to check the attic directly over the burned area in order to make sure there were no smoldering embers. The attic was full of smoke and had to be ventilated before they could gain access.

When the fire fighters reached the attic, they noticed plants being grown, but proceeded to check the attic for evidence of a fire. They determined that the area directly above the wood stove was no longer on fire but had been charred. One of the fire fighters suspected that the plants were marijuana, and he summoned his superior, an assistant fire marshal, to the attic. The assistant marshal believed that the attic contained a marijuana–growing operation, having noticed that two large lights were being used to grow an estimated 75 to 100 plants.

The assistant marshal then left the residence because of other duties, instructing fire fighters remaining at the scene not to touch the plants. The assistant marshal went to the fire station and telephoned a deputy prosecutor, seeking advice as to how the matter should be handled. The deputy prosecutor recommended that the evidence be confiscated.

During this time, no items were seized nor was the defendant told about the attic discovery.

After 15 to 20 minutes, the assistant marshal returned to Bell's house, accompanied by an assistant fire investigator. The investigator first inspected the wood stove to determine the origin and cause of the fire. The investigator and assistant marshal then went to the attic. At that point, the assistant marshal decided to call a deputy sheriff to assist in the seizure.

When Deputy Clarke arrived at Bell's house, he went to the attic along with the investigator and the assistant marshal. The investigator took pictures of the evidence in the attic. Then, a "human chain" of sheriff's officers and firemen was formed to remove the evidence from the attic to a vehicle outside. The record is unclear as to whether the fire department or the sheriff's office supervised the seizure, but at least for part of the time Deputy Clarke considered himself in charge. It took 5 to 10 people approximately an hour to remove the evidence, including 87 to 90 marijuana plants. Also seized were plastic sheets which had covered the walls and ceilings, plastic tubing, ventilator fans, vapor-discharge lights and their power supplies, irrigation equipment and fluorescent light fixtures. The seizure of the items was completed approximately 3 to 4 hours after the marijuana was first discovered. At no time during this period did anyone attempt to get a search warrant, telephonic or otherwise.

Bell argues that the evidence taken from the attic should be suppressed because the warrantless seizure violated his constitutional rights in two ways. First, he contends that the fire fighters needed a warrant to seize the evidence because exigent circumstances no longer existed once the fire was extinguished. Second, he contends that the sheriff's officers needed a warrant to enter Bell's house and take charge of the seizure.

We begin by recognizing that both the state and federal constitutions protect Washington's citizens from unreasonable searches. *State v. Bakke,* 44 Wn. App. 830, 832–33, 723

P.2d 534 (1986). The Washington State Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law", Const. art. 1, § 7, and the United States Constitution establishes citizens' rights "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . ." U.S. Const. amend. 4. Our state constitution generally affords individuals greater protection against warrantless searches and seizures than does the Fourth Amendment. *State v. Stroud,* 106 Wn.2d 144, 148, 720 P.2d 436 (1986); *State v. Myrick,* 102 Wn.2d 506, 510, 688 P.2d 151 (1984). In the present case, however, we reach the same result under each constitution.

Warrantless searches and seizures are per se unreasonable unless they fall within a few carefully drawn exceptions. *State v. Chrisman,* 100 Wn.2d 814, 818, 676 P.2d 419 (1984). The State has the burden of proving that one of the exceptions applies. *Chrisman,* at 822; *Bakke,* at 833.

### Fire Fighters' Need for a Warrant

Fire fighters, like policemen, are subject to the Fourth Amendment. *Michigan v. Tyler,* 436 U.S. 499, 504, 508, 56 L. Ed. 2d 486, 98 S. Ct. 1942 (1978). Therefore, fire fighters' warrantless seizures of property found at the scene of a fire[1] are per se unreasonable unless the State can show that they fall within one of the exceptions to the warrant requirement. *See Tyler,* at 508–09.

█ The fire fighters' role in this case is justified by the "plain view" exception to the warrant requirement. A "plain view" seizure is valid if the following requirements are met: "(1) a prior justification for intrusion; (2) inadvertent discovery of incriminating evidence; and (3) immediate knowledge by the officer that he had evidence before him."

---

[1] In most instances, the property seized in this manner by fire fighters will be evidence of arson. However, fire fighters are also justified in seizing other types of incriminating evidence, including contraband. *See generally* Annot., *Admissibility, in Criminal Case, of Evidence Discovered by Warrantless Search in Connection With Fire Investigation—Post–Tyler Cases,* 31 A.L.R.4th 194 (1984).

*Myrick,* at 514 (quoting *Chrisman,* at 819). We now turn to analysis of those elements.

There was a prior justification for the fire fighters' original intrusion into the attic. "A burning building of course creates an exigency that justifies a warrantless entry by fire officials to fight the blaze." *Michigan v. Clifford,* 464 U.S. 287, 293, 78 L. Ed. 2d 477, 104 S. Ct. 641 (1984). Moreover, exigent circumstances continue beyond the time when the fire has been extinguished. *Tyler,* at 510. Fire fighters need no warrant to remain in the building a reasonable time to make sure that the fire does not rekindle, to search for additional fires, and to ventilate the building. *Clifford,* at 293 n.4; *Steigler v. Anderson,* 496 F.2d 793, 795–96 (3d Cir.), *cert. denied,* 419 U.S. 1002 (1974); *State v. Olsen,* 282 N.W.2d 528, 531 (Minn. 1979). Bell's attorney even concedes that the fire fighters "were permitted to be where they were when they found the plants." Thus, exigent circumstances justify the fire fighters' presence not only in Bell's residence but also in his attic.

The discovery was also inadvertent. The fire fighters had the duty to ensure the fire was fully extinguished and would not rekindle. The fire fighters had to check the attic's condition because the wall beneath it had been burned up to the ceiling. The duty to investigate became even more compelling when they saw the extent of the smoke in the attic. The fire fighters had not exceeded the scope of these duties when they happened upon the mari-juana–growing operation.

Finally, the fire fighters were immediately aware that they had evidence before them. The purpose of this immediate knowledge requirements is so that "the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." *Coolidge v. New Hampshire,* 403 U.S. 443, 466, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971). The fire fighters did not engage in this type of extended search. All that is required to satisfy the "immediate knowledge"

element is a reasonable belief that evidence is present.[2] *State v. Lair,* 95 Wn.2d 706, 716–17, 630 P.2d 427 (1981); *State v. Claflin,* 38 Wn. App. 847, 853, 690 P.2d 1186 (1984), *review denied,* 103 Wn.2d 1014 (1985). One of the two fire fighters who first entered the attic testified that "I suspected that [the plants] were—chances are they were marijuana." The assistant marshal testified that "[t]his appeared to be a marijuana–growing operation to me." The third element is met in the present case.[3]

Bell contends, however, that we should hold the present seizure unconstitutional because there was plenty of time to obtain a search warrant after the operation was discovered. Bell argues that warrantless seizures should be held constitutional only if exigent circumstances exist throughout the duration of the search and seizure. Courts in this state, however, have time and again recognized that exigency is not a necessary element to a "plain view" seizure. *State v. Lair,* at 716; *State v. Marchand,* 37 Wn. App. 741, 749, 684 P.2d 1306 (1984), *rev'd on other grounds,* 104 Wn.2d 434, 706 P.2d 225 (1985); *State v. Johnson,* 17 Wn. App. 153, 159, 561 P.2d 701, *review denied,* 89 Wn.2d 1001 (1977). A search can be upheld under the plain view doctrine in the absence of exigent circumstances, as long as the doctrine's first element is satisfied. *Lair,* at 716. In other words, exigent circumstances are merely one factor to be considered in determining if the seizing officers' intrusion was justified. *Lair,* at 716.

---

[2]The United States Supreme Court has phrased the test similarly, holding that a "probable cause to believe" satisfies the second element of the plain view doctrine. *Texas v. Brown,* 460 U.S. 730, 741–42, 75 L. Ed. 2d 502, 103 S. Ct. 1535 (1983). Because the test for probable cause is one of reasonableness, *State v. Goodman,* 42 Wn. App. 331, 336–37, 711 P.2d 1057 (1985), the two tests are essentially the same.

[3]Bell argues that the "immediate knowledge" element is missing because the fire fighters called the assistant marshal to the attic, who, in turn, telephoned the prosecutor's office. The record shows, however, that these communications dealt with how to proceed, not whether they had evidence of a crime. This request for advice is by no means incompatible with immediate knowledge of the presence of evidence.

The *Lair* rationale remains equally persuasive today. Plain view alone, without the extra requirement of exigency, satisfies the privacy safeguards imposed by the Fourth Amendment. *Coolidge,* at 467–68; *Johnson,* at 159. In *Johnson,* the Court of Appeals described the privacy safeguards and showed how they are met by plain view searches:

> The Fourth Amendment search warrant requirement is satisfied when, *first,* the scrutinizing eye of a neutral magistrate is imposed between individual privacy and infrequently overzealous police. *Second,* the scope of search must be limited by particular description of items to be seized. Scope cannot be left to police discretion.
>
> Plain view alone has been recognized as an exception to the Fourth Amendment search warrant requirement because these privacy safeguards remain wholly intact. *First,* plain view requires the initial police intrusion be lawful, upon a valid search warrant or recognized warrant exception. . . . *Second,* because discovery must be inadvertent and recognition as contraband be immediate, the scope of search cannot be extended from the limited particular purpose of the initial intrusion to a general rummaging.

(Footnotes omitted.) *Johnson,* at 158.

In sum, because all three elements of the plain view doctrine have been met, no warrant was required for the fire fighters to seize the evidence.[4] Because the plain view doctrine is formulated identically under the state and federal constitutions, we hold that neither constitution required the fire fighters to get a warrant.[5]

---

[4]There are limits to the length of time the State can take in making "plain view" seizures. The Fourth Amendment prohibits unreasonable searches and seizures. An excessive amount of time can render a seizure unreasonable. *See United States v. Johns,* 469 U.S. 478, 83 L. Ed. 2d 890, 105 S. Ct. 881 (1985); *United States v. Place,* 462 U.S. 696, 77 L. Ed. 2d 110, 103 S. Ct. 2637 (1983). The 3 or 4 hours that it took the officers to seize material from the marijuana–growing operation was reasonable in light of the amount of material which had to be removed and their other duties at the scene of the fire.

[5]Furthermore, the assistant marshal did not need a warrant to enter the attic, even though that entry did not have as its sole purpose the control of fire hazards.

## SHERIFF'S OFFICERS' NEED FOR A WARRANT

Bell next argues that the sheriff's officers needed a warrant to enter the residence and to seize the property found by the fire fighters because they constituted a separate state agency. A handful of Fourth Amendment cases have analyzed this issue. The majority of those cases holds that the warrant is not needed because the defendant no longer has a reasonable expectation of privacy for that area of the residence where one officer is already present. *See United States v. Green,* 474 F.2d 1385 (5th Cir.) (warrant not necessary when secret service agent entered residence to take custody of counterfeiting plates found by deputy fire marshal investigating the cause of a fire), *cert. denied,* 414 U.S. 829 (1973); *Steigler v. Anderson,* 496 F.2d 793 (3d Cir.) (warrant not necessary when police officers seized evidence of arson found by a deputy fire marshal during a warrantless investigation which occurred during and immediately after a fire was extinguished), *cert. denied,* 419 U.S. 1002 (1974); *United States v. Gargotto,* 476 F.2d 1009 (6th Cir. 1973) (warrant not necessary when records of betting activity were microfilmed by IRS agents 2 days after they had been seized by an arson investigator and a police officer); *United States v. Brand,* 556 F.2d 1312 (5th Cir. 1977) (no warrant required when police officers entered house after another police officer had helped handle an emergency drug overdose and the second group of police officers observed evidence which formed the basis for a subsequent search warrant), *cert. denied,* 434 U.S. 1063 (1978).

The only case supporting Bell's position that the second agency needs a warrant is *United States v. Hoffman,* 607 F.2d 280 (9th Cir. 1979). *Hoffman* conflicts directly with the majority of the cases in that it holds that a reasonable expectation of privacy remains in areas where fire fighters

---

The "directed discovery" of evidence to an officer already justifiably on the premises by another officer who has discovered that evidence in plain view does not taint the initial inadvertent discovery. *State v. McAlpin,* 36 Wn. App. 707, 714, 677 P.2d 185, *review denied,* 102 Wn.2d 1011 (1984).

have entered. "[N]o citizen should reasonably expect that . . . any sort of public officer may thereafter invade his home for purposes unrelated to the initial intrusion." *Hoffman,* at 285.

■ We find the rationale of the majority cases persuasive and we reject the *Hoffman* analysis. Once the privacy of the residence has been lawfully invaded, it is senseless to require a warrant for others to enter and complete what those already on the scene would be justified in doing. *See Green,* at 1390; *Steigler,* at 798. We hold that where fire fighters have lawfully discovered evidence of criminal activity under the plain view doctrine, it is not necessary for sheriff's officers to obtain a warrant before entering a residence to seize the evidence.

There are, of course, limits on the actions of the police. When the police enter the residence, they are not allowed to exceed the scope of the fire fighters' earlier intrusion.[6] *See Green,* at 1390. In essence, they step into the shoes of the fire fighters. They cannot enter any area that the fire fighters were not justified in entering, nor seize any evidence that the fire fighters were not justified in seizing. In the present case, the sheriff's deputies did not exceed their permitted scope of activity. They entered the residence, seized the property already discovered by the fire fighters, and did no more. Their warrantless seizure was valid under the Fourth Amendment.[7]

Our analysis under the Washington State Constitution reaches the same result. Const. art. 1, § 7 provides that

---

[6]The officers arriving to seize the evidence would be entitled to expand the scope of the earlier intrusion only if they obtain a warrant or if "one of the exceptions to the warrant requirement justifies a more thorough or wide ranging search." *United States v. Brand,* 556 F.2d 1312, 1317 n.9 (5th Cir. 1977), *cert. denied,* 434 U.S. 1063 (1978).

[7]Similarly, the investigator did not need a warrant to enter Bell's house and the attic, even though his entry into the attic was not for the sole purpose of investigating a fire. His presence in the house was justified by his duty to determine the cause of the fire, and his presence in the attic was justified for the same reasons that justified the sheriff's officers' presence.

"[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." The sheriff's officers' disturbance of Bell's private affairs was authorized by law. Given the presence of the fire fighters already rightfully on the scene, the sheriff's officers' entry did not constitute a second invasion. The entry was merely for the purpose of completing what the fire fighters were already authorized to do.

## PUBLIC POLICY

The trial judge in his oral ruling held that public policy supplies an additional ground for suppressing the evidence. He reasoned that if fire fighters can make warrantless seizures of evidence, then citizens will be deterred from calling fire fighters to extinguish fires. Although we agree that the public is benefited when the fire department is promptly summoned to the scene of a fire, it is difficult to see how a warrant requirement will promote that policy. An individual's decision to call the fire department will not depend on a requirement that fire fighters obtain a warrant before seizing "plain view" evidence. The warrant requirement provides little solace to an individual who fears the discovery of incriminating evidence. The only way in which we could increase the likelihood that someone will immediately summon the fire department would be to preclude the seizure of evidence at a fire even with a warrant. This, of course, we will not do. We hold that public policy does not require suppressing the evidence in this case.

We affirm the Court of Appeals and remand this case for trial.

BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, and CALLOW, JJ., concur.

PEARSON, C.J. (concurring in the result)—I write separately because I believe the majority's analysis of the lawfulness of the search and seizure in this case is seriously flawed. The flaw lies in the majority's misapplication of the Fourth Amendment concept "the reasonable expectation of

privacy". Although I agree the search and seizure in this case were lawful, I believe the holding must be based on grounds different from the one offered by the court.

No one disputes that the fire fighters were justified in entering and remaining on petitioner's premises in order to extinguish the blaze and ensure its nonrecurrence. Similarly, no one disputes that the fire fighters lawfully observed the marijuana plants in plain view. Petitioner has not argued that the fire fighters lacked statutory authority to make a plain view seizure, although the issue has not been briefed. We may assume, however, that RCW 48.48-.060(2) authorizes such a seizure.[8] Thus, had the fire fighters on their own removed the marijuana plants, the seizure clearly would have been lawful.

However, the fire fighters did not remove the contraband; instead, they notified the police of their discovery. The police subsequently entered petitioner's home without a warrant and assisted in the marijuana seizure. In order for the plants to have been admissible into evidence against petitioner, then, the officers' warrantless entry must have been constitutional.

I believe the warrantless entry was constitutional based on what I perceive to be a logical synthesis of the plain view and exigent circumstances doctrines. Before explaining why that theory is the appropriate one for this case, I will discuss why the majority's analysis is unsatisfactory and why the plain view and exigent circumstances doctrines, each by itself, is insufficient to support the search and seizure here.

I

The majority appears to hold that the police officers' warrantless entry into petitioner's home did not violate the Fourth Amendment because petitioner no longer had any reasonable expectation of privacy in his home. Majority

---

[8]RCW 48.48.060(2) provides that fire marshals "are vested with police powers to enforce the laws of this state." Petitioner has not argued that the particular fire fighters, fire marshal, or fire inspector observing the marijuana plants lacked the training and other statutory prerequisites to the exercise of police powers.

opinion, at 200–01. Petitioner's reasonable expectation of privacy allegedly was destroyed by the lawful entry and continuing presence of the fire fighters. See majority opinion.[9] Unfortunately, this conclusion misconstrues the concept of "reasonable expectation of privacy".

Whenever an individual raises a Fourth Amendment objection to a police intrusion, the threshold question is whether the individual had a reasonable expectation of privacy in the "persons, houses, papers, [or] effects" that the police intruded upon. *See Katz v. United States,* 389 U.S. 347, 360, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967) (Harlan, J., concurring); U.S. Const. amend. 4. If the person is held to have had no reasonable expectation of privacy, then the intrusion was not, legally speaking, a search; thus, no Fourth Amendment right could have been violated. *See Katz,* at 351.

Generally, "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz,* at 351. For example, a person has no reasonable expectation of privacy with respect to his facial characteristics. *E.g., United States v. Dionisio,* 410 U.S. 1, 14, 35 L. Ed. 2d 67, 93 S. Ct. 764 (1973). This is because no one can reasonably believe that his skin, hair, and eye color will remain unobserved. A police officer therefore needs no justification for making a note of these salient characteristics; there is no Fourth Amendment interest to be protected.

When an individual is held to have no reasonable expec-

---

[9]The majority cites four circuit Court of Appeals cases supporting the view that a person's reasonable expectation of privacy in his home evaporates once a government agent lawfully enters the home. Majority opinion, at 200. Two of the cases cited are from the same (5th) circuit. A third case, *United States v. Gargotto,* 476 F.2d 1009 (6th Cir. 1973), is inapposite. The police in *Gargotto* entered the building in question to investigate the cause of a fire, a recognized exception to the warrant requirement. *See Michigan v. Tyler,* 436 U.S. 499, 510, 56 L. Ed. 2d 486, 98 S. Ct. 1942 (1978). No other entry onto premises was at issue in *Gargotto,* and consequently the case lends little support for the majority's position. The circuits, then, are split 2 to 1 on this issue. *See United States v. Hoffman,* 607 F.2d 280 (9th Cir. 1979).

tation of privacy in an object or location, two conclusions can be drawn. First, because police have intruded upon no protected interest, they need no justification for their conduct. The typical Fourth Amendment justifications for searches are probable cause and either a warrant or a recognized exception to the warrant requirement. But entering the public area of a store—where the owner has no reasonable expectation of privacy—requires no justification; police may enter on a hunch, a fishing expedition for evidence, or for no good reason at all. *See Maryland v. Macon,* 472 U.S. 463, 469, 86 L. Ed. 2d 370, 105 S. Ct. 2778 (1985). Entering the private areas of a commercial establishment, on the other hand, requires some measure of probable cause and prior judicial approval, for a reasonable expectation of privacy inheres in such areas. *See Marshall v. Barlow's, Inc.,* 436 U.S. 307, 315, 56 L. Ed. 2d 305, 98 S. Ct. 1816 (1978). In other words, when no reasonable expectation of privacy is held to exist in a location, the existence of probable cause or a warrant is immaterial to the lawfulness of the intrusion on that location.

The second conclusion stemming from a determination that no reasonable expectation of privacy exists in a location is that any government agent may intrude, provided he or she has enabling authority to do so. Thus, not only police but also Internal Revenue Service (IRS) agents, Immigration and Naturalization Service (INS) employees, and state social workers may enter the public areas of commercial premises, without probable cause and without a warrant.

A person is said to have no reasonable expectation of privacy in objects and places when the objects or places can readily be observed by the public at large. *See Katz v. United States, supra* at 351. Thus, as noted above, a store owner has no reasonable expectation of privacy in the public areas of his store. *Maryland v. Macon,* 472 U.S. at 469. A homeowner has no reasonable expectation of privacy with respect to the aerial observation of objects in his backyard when the objects can be seen by anyone flying in the legally

navigable airspace above the yard. *California v. Ciraolo,* 476 U.S. 207, 90 L. Ed. 2d 210, 106 S. Ct. 1809 (1986). *Cf. State v. Myrick,* 102 Wn.2d 506, 510, 688 P.2d 151 (1984) (article 1, section 7 of Washington State Constitution may offer privacy protection to places not protected by federal constitution). And an individual has no reasonable expectation of privacy protecting against the observation of objects in his house that are visible from normal access routes to the house. *See State v. Seagull,* 95 Wn.2d 898, 902, 632 P.2d 44 (1981).

It is important to recognize, however, that this doctrine—the "open view" doctrine—applies to visual intrusions only, not to physical intrusions such as entries onto premises. Although a person may have no reasonable expectation of privacy protecting against police observation of objects in a window of his home, he does have a reasonable expectation of privacy protecting against police entry into his home.[10] *See* 1 W. LaFave *Search and Seizure* § 2.2(a), at 322–24 (2d ed. 1987). *Cf. Washington v. Chrisman,* 455 U.S. 1, 6–7, 70 L. Ed. 2d 778, 102 S. Ct. 812 (1982) (although officer lawfully stood in open doorway to suspect's room and looked into room, officer could not enter room without justification; however, officer's "right to remain literally at [an arrestee's] elbow at all times" furnished justification).

When an individual does have a reasonable expectation of privacy in a location, this of course does not mean that police may never enter; it means only that police must have some justification for entering, and the justification must

---

[10]This is not to say that an individual always has a reasonable expectation of privacy protecting against physical entry onto premises. Police may enter "open fields" without infringing on any Fourth Amendment interest. *United States v. Dunn,* ___ U.S. ___, 94 L. Ed. 2d 326, 107 S. Ct. 1134, 1141 (1987). Police also may enter into areas that are impliedly open to the public, such as the usual access routes to a house, *see State v. Seagull,* 95 Wn.2d 898, 902, 632 P.2d 44 (1981), and customer areas of commercial premises, *see Maryland v. Macon,* 472 U.S. 463, 469, 86 L. Ed. 2d 370, 105 S. Ct. 2778 (1985). But in determining whether a reasonable expectation of privacy applies to physical entry onto premises, it is not enough to examine whether the premises are readily visible to the public; one must also examine whether the public has implied permission to enter.

satisfy the Fourth Amendment. Justification may be in the form of probable cause and exigent circumstances, *see, e.g., State v. Counts,* 99 Wn.2d 54, 659 P.2d 1087 (1983), or the right of an officer to follow an arrestee, *see, e.g., Washington v. Chrisman,* 455 U.S. at 6.

That a person has a reasonable expectation of privacy protecting against entry into his home is beyond dispute. "[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." (Citation omitted.) *Payton v. New York,* 445 U.S. 573, 585, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980). This privacy interest persists even when the resident opens the door in response to a police officer's knock. *See State v. Holeman,* 103 Wn.2d 426, 429, 693 P.2d 89 (1985). The privacy interest continues even in homes slightly damaged by fire, as in the instant case. *See Michigan v. Clifford,* 464 U.S. 287, 292, 78 L. Ed. 2d 477, 104 S. Ct. 641 (1984) (plurality opinion); *Michigan v. Tyler,* 436 U.S. 499, 505–06, 56 L. Ed. 2d 486, 98 S. Ct. 1942 (1978). Moreover, a lawful entry into one portion of a house will not necessarily justify entry into other portions. *See Clifford,* at 297.

The majority holds that once one government agent lawfully enters and remains in an individual's home, the reasonable expectation of privacy in the home is destroyed, and other government agents may follow in the first agent's footsteps. Majority opinion, at 200–01; see also majority opinion, at 201–02 (under article 1, section 7 of the Washington Constitution, entry of police while fire fighters already lawfully on premises "did not constitute a second invasion"). The implications of such a conclusion are troublesome. First, as discussed above, if no reasonable expectation of privacy remains in the home, then police officers may enter without justification—that is: without probable cause, without a warrant, and without any of the circumstances that typically justify a warrantless entry. Suppose that the fire fighters had not discovered contraband in petitioner's home but the police had just wandered by and decided to enter in hopes that something unlawful might

turn up. Under the majority's analysis, a dozen officers could crowd into the home for no purpose whatsoever: petitioner would have no Fourth Amendment claim to raise, for he would have no reasonable expectation of privacy.

Secondly, under the majority's analysis, once the fire fighters entered the home, the IRS agent, the INS agent, and the state social worker would be free to enter. As I indicated above, when no reasonable expectation of privacy exists in a location, any government agent may enter. A call to the city ambulance for a medical emergency suddenly opens one's home to the tax assessor and the marines. How can petitioner raise a Fourth Amendment objection when he has no reasonable expectation of privacy left in the home?

Although no one expects such outrageous scenarios to actually arise, they do illustrate the problem with the majority's reasoning. A home is not like navigable airspace, a store, or a public pathway, where any federal or state officer may wander freely. We cannot dispense with the requirement that government officers entering a person's home have some justification for their entry. What that justification may be will depend on the circumstances, but it certainly must be more than the observation that some other government officer "is already there". It would be a grave disfigurement of the constitution to hold otherwise.

Finally, the majority's reasoning would permit a different but perhaps more likely scenario—and one that is equally impermissible: circumvention of probable cause and warrant requirements. It is well established that the "probable cause" required for an administrative search is not as stringent as the "probable cause" required for a criminal investigation, and the warrant required for the administrative search may encompass a broader geographical area than a criminal warrant. *See Camara v. Municipal Court,* 387 U.S. 523, 534–39, 18 L. Ed. 2d 930, 87 S. Ct. 1727 (1967). In the administrative context, officers seeking to enter private premises must show a magistrate only that

reasonable legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular dwelling. Such standards . . . will not necessarily depend upon specific knowledge of the condition of the particular dwelling.

*Camara,* at 538. In the criminal context, in contrast, suspicion must be focused on the particular dwelling to be searched. *Camara,* at 535.

This distinction between the administrative and the criminal probable cause and warrant requirements carries over into fire investigations. Fire inspectors entering fire–damaged premises to determine the cause or origin of a blaze need not meet the same stringent warrant requirements as inspectors who have already determined the fire's cause and enter the premises solely to collect evidence for use in a criminal prosecution. *Michigan v. Clifford,* 464 U.S. at 294; *Michigan v. Tyler,* 436 U.S. at 508.

Under the majority's analysis, however, once a fire inspector lawfully enters a building to determine the cause or origin of a fire, police officers pursuing a criminal investigation may follow on the inspector's heels without bothering to obtain the traditional "criminal" warrant. Whether such circumvention of the probable cause and warrant requirements for criminal investigations is ever likely to be a prevalent practice is beside the point; the critical question is whether the constitution would prevent the practice. I believe it would, although the majority opinion would suggest otherwise.

Because I believe petitioner continued to have a reasonable expectation of privacy in his home after the fire fighters had lawfully entered, the lawfulness of the police officers' entry will depend on the sufficiency of their justification. The appropriate inquiry at this point, then, is whether the officers' warrantless entry fits into any of the recognized exceptions to the warrant requirement.

## II

One of the common justifications for a warrantless entry into a home is exigent circumstances. *See Ker v. California,*

374 U.S. 23, 39–41, 10 L. Ed. 2d 726, 83 S. Ct. 1623 (1963). Typical examples of exigent circumstances include the imminent destruction of evidence, the danger of harm to officers or the community, or the likelihood the suspect will escape. *Ker,* at 40; *Warden, Md. Penitentiary v. Hayden,* 387 U.S. 294, 297–99, 18 L. Ed. 2d 782, 87 S. Ct. 1642 (1967). None of these exigencies apply here. The exigent circumstance created by a fire, *see Michigan v. Tyler,* 436 U.S. 499, 509, 56 L. Ed. 2d 486, 98 S. Ct. 1942 (1978), also does not apply, for the State concedes that the police officers entered with the single purpose of seizing the contraband, and not of assisting in extinguishing the blaze.

Other exceptions to the warrant requirement, such as medical emergency, *see State v. Loewen,* 97 Wn.2d 562, 568, 647 P.2d 489 (1982), and accompanying an arrestee, *see Washington v. Chrisman,* 455 U.S. 1, 70 L. Ed. 2d 778, 102 S. Ct. 812 (1982), similarly are inapplicable. The right to make a warrantless entry to determine the cause of a fire, *see Tyler,* at 510, is of no avail to the State; as indicated above, the police did not enter for any fire–related purpose.

The plain view doctrine as currently espoused also provides no justification for the officers' warrantless entry. That doctrine only justifies the warrantless seizure of personal property when the police already have lawfully entered the home. *See Washington v. Chrisman,* at 5–6; *see also Coolidge v. New Hampshire,* 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971); *State v. Johnson,* 17 Wn. App. 153, 154–55, 561 P.2d 701, *review denied,* 89 Wn.2d 1001 (1977). The officers' lawful presence on the premises, in fact, is the first prerequisite to a plain view seizure. *See Coolidge,* at 466.

It appears, then, that the traditional exceptions to the warrant requirement cannot serve to justify the police officers' entry into petitioner's home. The absence of any previously recognized exception, however, need not deter us from extending existing doctrine when an extension would appear reasonable.

## III

As previously noted, the fire fighters were entitled to make a plain view seizure of petitioner's marijuana plants. The majority justifies the police officers' entry by observing that "[o]nce the privacy of the residence has been lawfully invaded, it is senseless to require a warrant for others to enter and complete what those already on the scene would be justified in doing." Majority opinion, at 201. The point here, however, is not that petitioner loses his reasonable expectation of privacy in his home but rather that a warrant is unnecessary when the police enter with the purpose of completing "what those already on the scene would be justified in doing." In other words, the purpose of the entry is critical to its lawfulness. Police would not have been justified in entering to conduct a general exploratory search or to look around for other evidence, nor would they have been justified in entering if the fire fighters had not first discovered the contraband. But when their sole purpose was to assist the fire fighters in the seizure of the contraband, the need for a warrant was dispelled. *Cf. Camara v. Municipal Court,* 387 U.S. 523, 534–39, 18 L. Ed. 2d 930, 87 S. Ct. 1727 (1967) (purpose behind an officer's entry determines nature of probable cause and warrant required for entry); *cf. also Michigan v. Tyler,* at 510–12 (entry of fire–damaged premises with purpose of determining origin of fire and preventing its recurrence may not require warrant, whereas entry with purpose of collecting evidence of crime would require warrant).

I believe police may make a warrantless entry into a home when:

1. Other government agents are already lawfully present in the home;

2. The agents already present have discovered contraband or evidence in plain view;

3. The agents already present have lawful authority to perform a plain view seizure;

4. The police reasonably are called to assist in the seizure;

5. The police enter with the sole purpose of assisting in the seizure;

6. The police do not exceed the scope of the entry by the other government agents; and

7. The seizure is performed reasonably expeditiously.

I believe the facts in this case support a warrantless entry under this theory. The fire fighters lawfully entered petitioner's home to put out a fire and lawfully remained in the home to be certain the fire was permanently extinguished. The fire fighters lawfully came across the contraband, and petitioner makes no argument they lacked the statutory authority to perform a plain view seizure of contraband. The marijuana operation was extensive, requiring the assistance of a number of persons to effect the plants' removal in a reasonable time. The police entered petitioner's home with the sole purpose of assisting in the seizure of the marijuana; they confined their presence to the area the fire fighters continued to monitor for fire recurrence, and the seizure was performed without undue delay.

Based on these facts, I would hold the search and seizure in this case to be lawful.

UTTER, J., and SCHUMACHER, J. Pro Tem., concur with PEARSON, C.J.