COURT OF APPEALS OF VIRGINIA


Present:  Judge Bray, Senior Judges Baker and Overton[*]
Argued at Norfolk, Virginia


NATHANIEL JONES
                                                OPINION BY
v.          Record No. 2024-97-1        JUDGE JOSEPH E. BAKER
                                                MARCH 23, 1999
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                    John E. Clarkson, Judge

            Douglas Fredericks for appellant.

            Leah A. Darron, Assistant Attorney General
            (Mark L. Earley, Attorney General, on brief),
            for appellee.


     Nathaniel Jones (appellant) appeals from his bench trial

convictions by the Circuit Court of the City of Norfolk (trial

court) for possession of cocaine with intent to distribute and

possession of a firearm while in possession of cocaine.  Appellant

contends the trial court erroneously denied his motion to suppress

evidence of the cocaine and firearm seized by the police from

appellant's apartment during a warrantless entry therein.  We

granted a writ on the single issue of whether it was objectively

     [*]Judge Overton participated in the hearing and decision of
this case prior to the effective date of his retirement on
January 31, 1999, and thereafter by his designation as a senior
judge pursuant to Code § 17.1-401, recodifying Code
§ 17-116.01:1.

reasonable for a police officer assisting at the scene of an apartment fire to make a warrantless, non-consensual entry of a specific apartment in response to a firefighter's statement, "I have something I want to show you."

In reviewing a trial court's denial of a motion to suppress, we are bound to review de novo the ultimate questions of reasonable suspicion and probable cause. See Ornelas v. United States, 517 U.S. 690, 699 (1996). But we "review findings of historical fact only for clear error and . . . give due weight to inferences drawn from those facts by resident judges and local law enforcement officers."[1] Id. Giving due weight to inferences appearing to have been drawn by the trial court, we find ample evidence to support its judgment.

The record discloses that on December 22, 1994, police and firefighters responded to a fire at appellant's apartment. Firefighter Nathan Thomas (Thomas) testified that once the fire was under control, he had the dual responsibility of ventilating the apartment by opening all the windows and searching the apartment for any people or pets who might be inside. While proceeding down a hallway in the apartment, Thomas found a handgun on the floor. Upon entering a bedroom to open the windows, Thomas

---

[1]In Virginia, questions of fact are binding on appeal unless "plainly wrong." Quantum Dev. Co. v. Luckett, 242 Va. 159, 161, 409 S.E.2d 121, 122 (1991); Naulty v. Commonwealth, 2 Va. App. 523, 527, 346 S.E.2d 540, 542 (1986).

-

saw a quantity of cash and some plastic bags containing what appeared to him to be narcotics.

Once he completed his search for people and pets, and his ventilation activities, pursuant to standard procedures Thomas informed his supervisor of the cash he had observed in the bedroom. Thomas then exited the apartment and approached Norfolk Police Officer Frank Reece (Reece), who was the first police officer to arrive on the scene. Without telling Reece what he had observed, Thomas said to Reece, "I have something I want to show you." Reece followed Thomas into the apartment to the back bedroom where Thomas showed Reece the suspected contraband, which was in plain view on the bed and dresser. The contraband consisted of a large block or sheet of crack cocaine "a couple of inches across" and prepackaged baggies of rock cocaine on the dresser. Thomas also showed Reece the handgun he had found in the hallway.

The substance in the bags on the bed and dresser appeared to Reece to be crack cocaine. He notified the vice and narcotics unit of what he had observed. Because all the windows were open to ventilate this ground-level apartment, and because a sizeable crowd was gathered outside, Reece posted himself in the bedroom to preserve the evidence. He did not, however, search the room.

Investigator T.L. Sterling (Sterling) proceeded to appellant's apartment in response to the call from Reece. The

-

firefighters were still at the scene when Sterling arrived, and the apartment was still being ventilated. Sterling entered the apartment and concluded that the substance on the bed was cocaine. He did not search the apartment, and he entered only the bedroom where Thomas had discovered the cocaine. Leaving two officers to guard the evidence, Sterling departed and obtained a search warrant for appellant's apartment.

Appellant argues that Reece's entry was unlawful, asserting that no exigent or other circumstances existed to justify a warrantless entry into his apartment. He further contends that Thomas was no more than an ordinary informant, that Reece was required to obtain a warrant before entering, and that the warrant Sterling obtained was tainted by Reece's warrantless entry.

The Commonwealth argues that Reece's entry was justified by exigent circumstances and that, in any event, discovery was inevitable because Thomas observed the contraband in plain view, and Thomas was lawfully on the premises. The Commonwealth further contends there is no dispute that Thomas' entry was legal and, therefore, when Reece was summoned to enter, he entered with the same rights as the firefighter.

By varying interpretations of the Fourth Amendment to the United States Constitution, courts judicially have created an "exclusionary rule," which requires suppression of evidence discovered in violation of that amendment and the rule.  See e.g.,

-

United States v. Calandra, 414 U.S. 338, 348 (1974).  In applying
the exclusionary rule, however, we are constantly reminded that
the Fourth Amendment does not forbid all searches and seizures,
only unreasonable ones.  See Elkins v. United States, 364 U.S.
206, 222 (1960); Verez v. Commonwealth, 230 Va. 405, 410, 337
S.E.2d 749, 752 (1986); Reynolds v. Commonwealth, 9 Va. App. 430,
435, 388 S.E.2d 659, 662 (1990).  When reviewing a trial court's
denial of a motion to suppress, we are instructed to apply the
exclusionary rule with caution.  See Joseph v. Commonwealth, 10
Va. App. 87, 98, 390 S.E.2d 491, 497 (1990) (en banc) (citing
Rakas v. Illinois, 439 U.S. 128, 137 (1978)).[2]

Unless an exception is shown by the evidence, in the absence
of exigent circumstances, the threshold of one's home may not be
crossed without a warrant.  See Payton v. New York, 445 U.S. 573,
590 (1980).  Whether the exclusionary rule should be applied to
exclude evidence discovered as a result of a warrantless entry
must be determined from an examination of the facts leading to the
entry.  See Commonwealth v. Ealy, 12 Va. App. 744, 752, 407 S.E.2d
681, 686 (1991).

At the trial level, the Commonwealth has a heavy burden to
justify a warrantless entry, as all such entries are presumed
invalid.  See Commonwealth v. Thornton, 24 Va. App. 478, 484, 483

---

[2]A warrantless search may not be unlawful if it is
reasonable.  See Reynolds, 9 Va. App. at 435, 388 S.E.2d at 663.

-

S.E.2d 487, 490 (1997). Upon appeal from a trial court's denial of a motion to suppress the discovered evidence, however, the burden is on the appellant "to show that this ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error." Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980).

A burning building presents an exigency of sufficient proportions to render a warrantless entry reasonable. See Michigan v. Tyler, 436 U.S. 499, 509 (1978). Moreover, the exigent circumstances created by a fire are not extinguished the moment the fire is put out. Rather, the exigent circumstances warranting intrusion by government officials continue for a reasonable time after the fire has been extinguished to allow fire officials to fulfill their duties, including making sure the fire will not rekindle, and investigating the cause of the fire. See id. at 510.

If any incriminating object comes into view during the performance of the fireman's duty, it may be seized without a warrant pursuant to the "plain view" doctrine. See Michigan v. Clifford, 464 U.S. 287, 295 n.6 (1983). For that exception to the warrant requirement to apply, the record must show (1) a prior justification for the intrusion, (2) inadvertent discovery of

-

incriminating evidence,[3] and (3) immediate knowledge by the official that the evidence he is observing is probably contraband. See Coolidge v. New Hampshire, 403 U.S. 443, 466 (1971) (it must be "immediately apparent" to the officers that they have discovered evidence of criminal activity).

Applying those principles to this case, it is readily apparent, and appellant concedes, that Thomas was lawfully on the premises fulfilling his duties as a firefighter when he discovered the gun and suspected drugs. He not only had the right to enter appellant's apartment without a warrant, he also had the duty to ventilate the apartment by opening its windows and to search for people or pets that might be inside. Thomas' intrusion clearly was justified and the discovery of the incriminating evidence was inadvertent. Moreover, Thomas immediately recognized that the items he found were probably narcotics. See Texas v. Brown, 460 U.S. 730, 741-42 (1983) (the "immediately apparent" prong of the "plain view" test requires only that the observer have probable cause to believe that the evidence he sees is contraband). Accordingly, the record discloses that no Fourth Amendment violation occurred when Thomas "crossed the threshold" and inadvertently discovered the contraband.

---

[3]It has been held that this no longer is a requirement. See Horton v. California, 496 U.S. 128, 140 (1990).

-

Appellant argues that even if Thomas was legitimately present in the apartment, the police officers did not have the right to enter the apartment without first securing a warrant.  We disagree.

After a fireman has observed evidence in plain view, he may summon a police officer, who may enter the residence and seize the evidence without first obtaining a warrant.  See United States v. Green, 474 F.2d 1385, 1390 (5th Cir.), cert. denied, 414 U.S. 829 (1973); Commonwealth v. Person, 560 A.2d 761, 766 (Pa. Super. 1989); State v. Bell, 737 P.2d 254, 257-58 (Wash. 1987).  In Green, the Court noted that where a lawful intrusion has already occurred, and a seizure by an official has validly taken place as a result of that intrusion, the invasion of privacy is not increased by an additional officer entering the residence.

> Once the privacy of a dwelling has been lawfully invaded, to require a second officer from another law enforcement agency arriving on the scene of a valid seizure to secure a warrant before he enters the premises to confirm that the seized evidence is contraband and to take custody of it is just as senseless as requiring an officer to interrupt a lawful search to stop and procure a warrant for evidence he has already inadvertently found and seized.  The apparent conflict between the Constitution and common sense which the plain view doctrine has reconciled is the same misconception which we here seek to dispel.

Green, 474 F.2d at 1390 (holding that a federal law enforcement officer did not need a search warrant where the evidence in

-

question had already been seized by a state deputy fire marshal) (citation omitted).

Here, neither Thomas nor the police officers made a general search of the apartment prior to obtaining a warrant to search. The police officers merely followed in the footsteps of Thomas, who was authorized to enter the residence to fulfill his duties as a firefighter. "'[W]here firefighters have lawfully discovered evidence of criminal activity under the plain view doctrine, it is not necessary for [police] officers to obtain a warrant before entering a residence to seize the evidence.'" Person, 560 A.2d at 768 (quoting Bell, 737 P.2d at 259). A warrant is not required in these circumstances because the defendant no longer has a reasonable expectation of privacy for that area of the apartment where one official validly on the premises has made the lawful discovery, and another is merely preserving the incriminating evidence. See id.; Green, 474 F.2d at 1390; Steigler v. Anderson, 496 F.2d 793, 798 (3d Cir.), cert. denied, 419 U.S. 1002 (1974); United States v. Brand, 556 F.2d 1312, 1313 (5th Cir. 1977), cert. denied, 434 U.S. 1063 (1978); Bell, 737 P.2d at 259.

Reece and Sterling only entered those portions of the apartment where Thomas had entered pursuant to his authority as a firefighter. See id. (upon entering the residence, the police officers "are not allowed to exceed the scope of the fire fighters' earlier intrusion"). The exigency created by the fire

-

still existed when Sterling entered the building.  The officers did not search the apartment, but merely observed the cocaine that was in plain view in the bedroom.  It was immediately apparent to all involved that the evidence was contraband, and Sterling obtained a warrant before seizing the evidence.  Accordingly, the challenged evidence was not obtained as the result of an unreasonable search and seizure.

For the reasons stated, the judgment of the trial court is affirmed.

<u>Affirmed.</u>