940 P.2d 923

Steven M. MAZEN, Petitioner,

v.

The Honorable John H. SEIDEL, a judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,

and

STATE of Arizona, Real Party in Interest.

No. CV–96–0379–PR.

Supreme Court of Arizona, En Banc.

June 10, 1997.

Klock & Klock by John B. Klock, Linda A. Klock, Tempe, for Steven M. Mazen.

Richard M. Romley by Gerald R. Grant, Kevin H. Maricle, Paula G. Davidon, Phoenix, for State of Arizona.

## OPINION

FELDMAN, Justice.

We granted review of a court of appeals' opinion holding that evidence seized by police after a fire in a rented storage unit should have been suppressed by the trial court. *Mazen v. Seidel,* No. 1 CA–SA 95–0355, 1996 WL 254814, —— Ariz. ——, —— P.2d —— (Ariz.Ct.App. May 16, 1996). We have jurisdiction pursuant to Ariz. Const. art. VI, § 5(3) and Ariz.R.Crim.P. 31.

### FACTS AND PROCEDURAL HISTORY

Around 5:00 a.m. on June 1, 1995, a tenant of a Phoenix storage facility noticed smoke emanating from another unit in the building. The storage warehouse consists of three buildings built in a U-shape, facing a common driveway. Each building is divided into separate units, but there is common attic space. Each unit has one large garage-type door, as well as a standard entrance door. Firefighters responding to the tenant's call first entered Unit 4; after determining the fire's path, they cut the lock and forced open the door to Unit 3, rented by Steven M. Mazen.

The fire not only burned through the ceiling but was so hot it melted the solder on the water pipes; the resulting leak extinguished most of the fire in Unit 3.

Upon opening the door to Unit 3, the firefighters saw an elaborate system of grow lights and irrigation pipes trained on approximately fifteen singed marijuana plants. Because of his training as an emergency medical technician, the firefighter who opened the unit recognized the plants as probably being marijuana. The police were then called.

Police officers, who arrived during the clean-up operation, could clearly see the marijuana plants through the unit's open door. At approximately 6:30 a.m. the firefighters left and the arson investigator arrived. Shortly thereafter, detectives from the Drug Enforcement Bureau (DEB) arrived. The police officers and DEB detectives seized the growing equipment, the marijuana plants, and plastic garbage bags filled with marijuana. Mazen was later arrested and charged.

In a motion to suppress the seized evidence, Mazen argued that while the firefighters had a right to enter his unit to fight the fire, they were not trained to recognize and seize the plants. Furthermore, although the police may have had probable cause to request a search warrant, by the time they arrived the exigency of the situation had dissipated and therefore they could not lawfully make a seizure based merely on plain view. The trial judge rejected this argument and held, under the rationale of *State v. Bell,* 108 Wash.2d 193, 737 P.2d 254 (1987), that because the firefighters could have lawfully seized the marijuana, the police could step into their position and also seize the evidence.

The court of appeals accepted jurisdiction of Mazen's special action and vacated the trial judge's order, finding there were no longer any exigent circumstances when the police entered the unit. Without exigent circumstances to validate the officers' presence in the unit, the court held the plain view seizure was not lawful. *Mazen,* at *4, —— Ariz. at ——, —— P.2d at ——. The court rejected the majority opinion in *Bell* as too broad because it might allow any number of

government officials to parade through private areas once the privacy had been lawfully breached by one set of officials. Instead, the court focused on the limiting factors discussed by the concurrence in *Bell* and a statement in the majority opinion that would prohibit police from "entering [or seizing] any evidence that the firefighters were not justified in seizing." 737 P.2d at 259. Because the court of appeals failed to find any statutory authority for Arizona firefighters to seize contraband, they reasoned that police officers were likewise prohibited from warrantless seizure of illegal substances in their plain view.

## DISCUSSION

### A. Search and seizure in Arizona

 A warrantless search is unlawful under the Fourth Amendment of the United States Constitution and article II, section 8 of the Arizona Constitution unless one of the specific and well-established exceptions to the warrant requirement has been met. *State v. DeWitt*, 184 Ariz. 464, 467, 910 P.2d 9, 12 (1996); *State v. Castaneda*, 150 Ariz. 382, 389, 724 P.2d 1, 8 (1986). Exigent circumstances are one exception to the warrant requirement and include protective sweeps in response to a probable burglary in progress, a fire or medical emergency, and the likelihood that evidence will be destroyed. *See Michigan v. Tyler*, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978) ("Indeed, it would defy reason to suppose that firemen must secure a warrant or consent before entering a burning structure to put out the blaze."); *Vale v. Louisiana*, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); *DeWitt*, 184 Ariz. at 467, 910 P.2d at 12; *State v. Fisher*, 141 Ariz. 227, 237, 686 P.2d 750, 760 (1984). This court has defined exigent circumstances as "those in which a substantial risk of harm to the persons involved or to the law enforcement process would arise if the police were to delay until a warrant could be

obtained." *State v. Greene*, 162 Ariz. 431, 432, 784 P.2d 257, 258 (1989).

 Once entrance into a private space is determined to be lawful, contraband that is in plain view, or even "plain smell," may be lawfully seized. *See Horton v. California*, 496 U.S. 128, 136, 110 S.Ct. 2301, 2307–08, 110 L.Ed.2d 112 (1990). However, according to our court of appeals, "the discovery of the object must be inadvertent; and its evidentiary value must be immediately apparent to the officer." *State v. Kelly*, 130 Ariz. 375, 378, 636 P.2d 153, 156 (App.1981); *cf.* WAYNE R. LaFAVE, SEARCH AND SEIZURE § 6.7 (1978). If the officer was lawfully in the place where he saw the contraband, this court has stated that there was no real search; thus "it cannot be unreasonable or unconstitutional to seize the item in plain view." *State v. Cobb*, 115 Ariz. 484, 488, 566 P.2d 285, 289 (1977).

### B. Lawful police presence

 Lawful warrantless seizure requires that the police presence was lawful. It is uncontroverted that the firefighters opened and entered the unit in the midst of a permissible exigency—a fire in progress. The entry was not pretextual and the discovery of the contraband was entirely inadvertent. According to testimony by Kevin Riley, South Fire District Battalion Chief, had the firefighters not recognized the plants as contraband, they probably would have removed them from the unit during their clean-up operations. Part of the fire department's duties include cleaning up after a fire, salvaging property, and moving garbage and debris outside of the building. The nature of the growing operation was apparent; it was only because they recognized the plants as marijuana that the firefighters suspended their salvage efforts in the unit and instead secured the scene.[1] When the police officers arrived, the firefighters were still on the scene. The officers took only a step or two into the unit. They were able to see the marijuana plants and the growing operation.

---

1. "[W]e have a very limited knowledge of legal proceedings, but the chain of evidence was something that has been talked about as far as what our investigators look at. So that was one thing that I wanted to be very careful that we didn't lose any chain of evidence [sic]; that we had a

secure scene when P.P.D. officers got there. I was able to turn the scene over to them completely before I left." Battalion Chief Riley, Transcript of Evidentiary Hearing, Nov. 17, 1995, at 21.

The officers called the drug unit and remained on the scene until the drug officers arrived and removed the contraband.[2] The case then turns on this question: Once the firefighters were finished and the exigency arguably had dissipated, could the first two officers and the drug officers again enter the unit without a warrant and seize the plants?

After the first two officers arrived, the fire department's arson investigator came on the scene and began investigating pursuant to his statutory duty. *See* A.R.S. § 9–500.01. It is well established that an arson investigator may search for and seize evidence after a fire and the exigency have ended, as courts have created a window within which an official's warrantless presence is lawful, despite the dissipation of the exigency. *See Steigler v. Anderson,* 496 F.2d 793 (3d Cir.1974). In *Tyler,* the United States Supreme Court held that a warrant was not necessary for re-entries, close in time to the initial exigency, by officials investigating a fire and possible arson because the "entries were no more than an actual continuation of the first entry, and the lack of a warrant thus did not invalidate the resulting seizure of evidence." 436 U.S. at 509, 98 S.Ct. at 1951.

The *Tyler* Court, however, addressed situations in which fire officials re-entered the premises for a purpose closely related to the exigency—investigating arson. In our case the police entered and seized evidence unrelated to the fire investigation. Several states have dealt with this question, most notably the Washington Supreme Court in *Bell,* 737 P.2d 254. *See also State v. Loh,* 275 Mont. 460, 914 P.2d 592 (1996); *People v. Harper,* 902 P.2d 842 (Colo.1995). In *Bell* firefighters responded to a house fire caused by a wood-burning stove on the main floor. Because the wall and ceiling were charred, the firefighters went into the attic to ensure there were no smoldering embers. In the attic they found marijuana plants and a growing operation. The firefighters then called police, who assisted in identifying and removing the evidence. 737 P.2d at 256. The Washington court held that the firefighters were lawfully in the attic and were justified in seizing evidence in plain view. *Id.* at 257. Citing a handful of federal cases, the court held that the police officers' later entry was also lawful as the defendant no longer had a reasonable expectation of privacy for that area once the firefighters had lawfully entered. *Id.* at 258.[3] The court stated:

> Once the privacy of the residence has been lawfully invaded, it is senseless to require a warrant for others to enter and complete what those already on the scene would be justified in doing. We hold that where firefighters have lawfully discovered evidence of criminal activity under the plain view doctrine, it is not necessary for sheriff's officers to obtain a warrant before entering a residence to seize the evidence.

*Id.* at 259 (citations omitted).

In the present case, the court of appeals declined to apply this concept, citing both the

---

**2.** In his memorandum of points and authorities, Mazen gave this time line for the entries:

5:30 a.m.— Firefighters respond to the fire

6:00 a.m.— Officers Campbell and Nicholas respond to firefighter's call concerning the marijuana, stepped a few feet into the building and identified the plants as probably marijuana, then stood by for the arrival of DEB officers

6:26 a.m.—Firefighters leave the scene, Officers Campbell and Nicholas remaining on the premises

6:30 a.m.—Arson investigator Estrella arrives, takes pictures, conducts investigation, and leaves; Officers Campbell and Nicholas still on the premises

7:45 a.m.—Detective Kozeliski from DEB arrives, looks at the plants, calls for a truck to transport the evidence, then re-enters and makes the plain-smell discovery of the bagged marijuana

**3.** The federal cases cited in *Bell* for this proposition were: *United States v. Brand,* 556 F.2d 1312 (5th Cir.1977) (no warrant required when police entered to aid after an emergency drug overdose and the officers observed evidence that formed the basis for a subsequent search warrant); *Steigler,* 496 F.2d 793 (warrant not necessary when police seized evidence of arson found by fire marshal); *United States v. Gargotto,* 476 F.2d 1009 (6th Cir.1973) (warrant not necessary to microfilm records of gambling that had been seized two days earlier by arson investigator and police); *United States v. Green,* 474 F.2d 1385 (5th Cir.1973) (warrant not necessary when secret service agent entered to take custody of counterfeiting plates found by deputy fire marshal). *But see United States v. Hoffman,* 607 F.2d 280 (9th Cir.1979) ("[N]o citizen should reasonably expect that ... any sort of public officer may thereafter invade his home for purposes unrelated to the initial intrusion.").

concurring opinion in *Bell* and *United States v. Hoffman*, 607 F.2d 280 (9th Cir.1979). Rather than completely rejecting the *Bell* rule, however, the court seized upon the Washington court's statement that the police "cannot enter any area that the fire fighters were not justified in entering, nor seize any evidence that the fire fighters were not justified in seizing." *Mazen*, at *3, at ——, —— P.2d at ——; *Bell*, 737 P.2d at 259. The court of appeals held that although a fire marshal or arson investigator may seize evidence of arson, he had no authority to seize other evidence of crime. Thus, the police officers could not "step into the shoes" of the firefighters to lawfully seize the marijuana. *Mazen*, at *3, at ——, —— P.2d at ——.

We believe this argument is incorrect.[4] Whether or not firefighters are permitted to seize evidence not related to arson, part of their duties includes moving and salvaging property in fire-damaged areas. During the hearing on the motion to suppress, Battalion Chief Riley stated:

> Well, the other thing that we look at doing is our loss control effort. And those are trying to, you know, minimize damage and trying to do the most that we can in order to salvage or prevent damage to the belonging of the property of that particular occupant, which would be covering up things, because even after we have the fire knocked down, we still have to—what we have to do is overhaul. We have—a lot of our overhaul procedures, we are going to have to do access operations. We still need to pull ceiling. We need to pull walls to make sure that the fire isn't burning into the insulation or down into walls. Oftentimes, those are the kinds of activities that we have to do, you know, before the job is completely done. And then we also like to wrap all the stuff up and all the

> refuse, garbage and things that have been burned up and stack it outside so it can be picked up by, you know, a refuse company so they can haul it away.

> \* \* \*

> We don't leave until we call the occupant services. And again, it is part of our loss control effort. But we don't leave until after we have picked up; we have got all your salvage cover laid out; we have picked up all the burnt debris and garbage. We shovel it into carryalls and stack it outside.

Transcript of Evidentiary Hearing, Nov. 17, 1995, at 18–19. The firefighters would have been justified in removing the plants to a location outside of the unit where the police could have seen them and legally seized them. Instead, recognizing the nature of the plants but unsure about evidentiary procedure, the firefighters simply called the police and maintained the scene until the officers stepped into the firefighters' shoes to enter and move the marijuana plants. Because the firefighters' warrantless entrance was proper, the police officers' later entrance and warrantless seizure of contraband in plain view did not violate the Fourth Amendment or article II, section 8 of the Arizona Constitution. While fire clean-up and investigation was still occurring, the police did no more than enter where the firefighters had entered and seize contraband the firefighters could have carried out and laid at their feet.

The police could lawfully step into the shoes of the firefighters to seize what the firefighters could move. Mazen "no longer had a reasonable expectation of privacy for that area ... where one officer" was already legally present. *Bell*, 737 P.2d at 259. Had the police been the first to respond to the fire, or had it been necessary for the police to aid the firefighters, the officers would have

---

4. And open to some interpretation. A.R.S. § 9–500.01(B) states that "[a] person appointed pursuant to the provisions of subsection A while engaged in arson investigation in this state *possesses and may exercise law enforcement powers of peace officers of this state.*" However, subsection A states that the *"primary duty* of arson investigators is the investigation, detection and apprehension of persons who have violated or are suspected of violating any provision of title 13, chapter 17." (Emphasis added.) This leaves open the question of whether an arson investigator may lawfully seize evidence that is criminal but not related to his investigation. Although subsection C does not "grant any powers of peace officers of this state to arson investigators other than those necessary for the investigation, detection and apprehension authority under subsection A," we do not believe this necessarily means firefighters must turn a blind eye to contraband discovered in the course of their work.

been able to enter the building because of the exigency and see the contraband. Police officers often fill many roles, including paramedic, social worker, and fire investigator. *See United States v. Brand,* 556 F.2d 1312 (5th Cir.1977) (police aid in emergency drug overdose); *State v. Jones,* 188 Ariz. 388, 396, 937 P.2d 310, 318 (1997) (police checking on welfare of siblings of abuse victim enter trailer and see blood-stained towel). Thus, it is not unreasonable to allow them to step into the shoes of those people when those roles overlap the role of criminal investigator.[5] As *Bell* indicates, all the cases that have considered this issue have so held, with the exception only of *Hoffman,* 607 F.2d 280. We agree with *Hoffman* that citizens need not expect that the initial, lawful entry of one agency justifies successive, unrelated, and warrantless entries by officers of other agencies. *Id.* at 285. We do not believe, however, the subsequent police entry in this case was either successive or unrelated. The officers arrived while the firefighters were on the scene. It would, we think, exalt form over substance to hold that when other government agents have legally entered the premises, with power and responsibility to remove and handle property, police could not also enter while the first agents were still engaged in their work and seize what was in plain view and plainly contraband. *See Bell,* 737 P.2d at 257–59. Such a rule would serve no interest protected by the prohibition against unreasonable searches and seizures and the warrant requirements of the state and federal constitutions. Nor would it further the privacy interests protected by article II, section 8 of the state constitution to hold that the police could not enter the same room in which the firefighters were still working and see what the firefighters could see.

## C. Delay between the discovery and the removal by the police

■ We have previously stated that on expiration of the exigency justifying the war-

rantless entry and search, and absent something more than mere suspicion that the items in plain view were contraband, there is no justification for continuing the warrantless search. *DeWitt,* 184 Ariz. at 467, 910 P.2d at 12 (*citing State v. Cook,* 115 Ariz. 188, 194, 564 P.2d 877, 883 (1977)). In *DeWitt* we concluded that the evidence should be suppressed. But there are two significant distinctions to be made between the present case and *DeWitt.*

A police officer investigating a possible burglary at DeWitt's home, while making a sweep of the house, saw glass vials and equipment on the top shelf of a closet. He was suspicious and called in his partner to take a look. Because both officers were uncertain whether the items were used to manufacture drugs, they called in DEB officers. One of the DEB officers had to stand on a stool to clearly see the items.

The evidence seized at DeWitt's home was not clearly contraband, as evidenced by the first two officers' inability identify it. Second, the evidence was not in plain view, as the DEB officer had to stand on a stool to see far enough into the closet to determine the materials were evidence of drug processing. *DeWitt* is a case of successive entries by officers who at first had not found obviously illegal materials in plain view and called in help to confirm mere suspicions. This court assumed without deciding that the second warrantless entry by the first officer's partner was lawful. *Id.* at 466, 910 P.2d at 11. However, we held the later entry by DEB officers was an unlawful confirmatory search. *Id.* at 468, 910 P.2d at 13.

In the case at hand, the contraband was in plain view and its nature immediately apparent. Although there were entries by various police officers as part of the process to remove the evidence, the initial seizure occurred when the firefighters recognized the illegal nature of the plants and called in the police to remove them from the premises.[6]

---

5. This forecloses the problem of the inspection or entrance by one official leading to a parade of government officials. There is not the same type of nexus between a building inspector and the

police (or the same exigency) that would permit a warrantless search and seizure.

6. We give no weight to Mazen's contention that Mexican Evening Primrose looks similar to mari-

The first officers stayed on the scene but would have been justified in seizing the contraband the moment they first entered and saw it. We are unwilling to say that their delay in physically seizing it because of safety, bureaucratic considerations, or logistics—such as waiting for the arrival of the DEB officers or their truck—would then prevent them from taking the evidence once these problems were solved. From the moment of the firefighters' clearly appropriate warrantless entry to the moment the plants and equipment were loaded in the DEB truck, there was never a time when the unit's door was closed or a firefighter or police officer not on the scene. In sum, from the moment the firefighters arrived, there was never a time when Defendant regained his expectation of privacy.

Furthermore, in *State v. Girdler*, this court cited with approval *Tyler*'s holding that conditions at a fire scene may delay a permissible search. 138 Ariz. 482, 485, 675 P.2d 1301, 1304 (1983) (*citing Tyler*, 436 U.S. at 509, 98 S.Ct. at 1951). The present case is not one of successive entries by different governmental agencies to confirm a mere suspicion; nor is it one in which officers of the second agency exceeded the proper temporal or spatial boundaries of the original entry. Thus, we find the seizure of the marijuana plants and the growing equipment was lawful and the evidence is admissible.

**D. Seizure of the bagged marijuana**

■ The first police officer who responded to the firefighters' report of the marijuana entered about two feet into the unit to determine whether the plants were marijuana. He then called a supervisor, who informed DEB and arranged for a truck to pick up the evidence. When the DEB officer arrived to assist in the seizure, he smelled the odor of burning marijuana behind a box of lights the officers were seizing. He moved the box to reveal a garbage bag that had been partially burned open. Inside the bag he could see smaller baggies filled with marijuana, which he seized.

■ Ordinarily, smelling burning marijuana is in itself an exigent circumstance justifying the warrantless entry into a building. *State v. Kosman*, 181 Ariz. 487, 491, 892 P.2d 207, 211 (App.1995); *see also Vaillancourt v. Superior Court*, 273 Cal.App.2d 791, 78 Cal. Rptr. 615 (1969) (smell of burning marijuana indicates the evidence is disappearing). However, as discussed above, no such exigency was required to allow the officers to be where they were; they were already lawfully in the storage unit. As they were moving a box of lighting equipment they were justifiably seizing, the bags of marijuana came into view. This is a different type of search than occurred in *Arizona v. Hicks*, in which the officer moved an otherwise unsuspicious stereo to look at the serial numbers and thereby determine whether it was stolen. 480 U.S. 321, 324, 107 S.Ct. 1149, 1152, 94 L.Ed.2d 347 (1987). Thus, even though there was a plain smell of marijuana that would have justified a broadening of the search, the seizure of the bags of marijuana was also a continuation of the original search and seizure and in plain view. We find no Fourth Amendment concerns that would prevent seizure of the bags of marijuana.

**CONCLUSION**

Firefighters' duties include salvaging property in fire-damaged areas. Even if firefighters and arson investigators may not be charged with the authority to make seizures based on criminal activity, they would have been justified in removing the marijuana they saw in the storage unit. Instead the firefighters maintained the crime scene and the police officers stepped into the shoes of the firefighters to enter and move the marijuana plants. Although the first officer on the scene did not make the physical seizure, he lawfully could have done so.

We view the situation presented by the facts of this case differently from the dissent and fear the dissent therefore paints the opinion too broadly. We do not hold, as the dissent argues, that Mazen lost his reasonable expectation of privacy because "a state agent's initial presence was lawful." Dissent

---

juana. We find it difficult to believe that so elaborate an apparatus would have been con-

structed to grow primroses. No doubt the police would have been more incredulous.

at 203, 940 P.2d at 931. Rather, we hold that Mazen lost the expectation of privacy only for objects in plain view and only because the state agents' initial *and continued* presence was lawful. Nor do we see two searches that "were entirely separate, requiring two separate justifications." Dissent at 203, 940 P.2d at 931. There was no search of any kind except that incident to putting out the fire (opening the door of the unit), and only a seizure of contraband in plain view. The contraband was in plain view at the time the firefighters entered, while they were there fighting the fire, and when the first police officers arrived. Unlike *DeWitt*, this is not a case of separate entries and successive confirmatory searches. The firefighters were aware of the contraband when they first entered and left it in the unit, instead of moving it outside and presumably handing it to the first officer to arrive, only because they wished to leave the chain of evidence to police procedures.

Thus, we do not authorize consecutive entries and searches, even if confined to the physical boundaries of the initial entry. In the present case, the police entry was confined by both *spatial and temporal boundaries* of the firefighters' entry, presence, and plain-view discovery. The firefighters were still on the scene doing their work when the police first arrived. From that point forward, the police remained on the scene, with the door open, waiting for the DEB truck to arrive.

The dissent argues that the existence of probable cause does not justify a warrantless entry, search, or seizure absent exigent circumstances. We agree, but in our view, the whole case turns on the officers' lawful right of access. The firefighters entered under exigent circumstances. We hold that the officers, responding to the firefighters' call, could also enter while the firefighters were still on the scene, performing their customary work. Confining themselves to the physical boundaries of the area in which the firefighters were working and making no additional inspection or search, the police could seize contraband in plain view. If, as we believe, these acts were legitimate and lawful, then everything that transpired afterward, including the subsequent discovery of the burned or charred trash bags full of marijuana baggies, was lawful. We are unwilling to say that the delay because of safety considerations or logistics would then prevent the police from seizing the contraband once these problems had been solved. Thus, we find all the seizures were lawful and the evidence is admissible.

The court of appeals' opinion is vacated. The trial court's order denying suppression is approved. We remand for further proceedings consistent with this opinion.

JONES, V.C.J., and MARTONE, J., concur.

MOELLER, Justice, dissenting.

I respectfully dissent. I believe the court of appeals correctly concluded that the evidence should have been suppressed. The firefighters left the scene at approximately 6:26 a.m. because the fire was extinguished and the emergency was over. One hour and twenty minutes later, the Drug Enforcement Bureau ("DEB") detectives arrived on the scene. DEB detective Kozeliski entered the storage unit to confirm that the plants were contraband and to seize them. Because the purpose of this warrantless entry was unrelated to putting out the fire or investigating its cause, the search and seizure of the contraband does not fall within any clearly established exception to the Fourth Amendment and is invalid.

## I. Unlawful Search

The Fourth Amendment to the United States Constitution and Article II, Section 8 of the Arizona Constitution proscribe unreasonable searches and seizures. *State v. Ault*, 150 Ariz. 459, 463, 724 P.2d 545, 549 (1986). Warrantless searches are "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *State v. DeWitt*, 184 Ariz. 464, 468, 910 P.2d 9, 13 (1996). It is uncontroverted that a firefighter's warrantless entry to put out a fire and investigate its cause falls within the exigent circumstances exception. *Michigan v. Tyler*, 436 U.S. 499,

509–10, 98 S.Ct. 1942, 1950, 56 L.Ed.2d 486 (1978). Even so, the scope of the intrusion must be "strictly circumscribed by the exigencies which justify its initiation." *Mincey v. Arizona,* 437 U.S. 385, 393, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978). Once the fire is out and the exigency has dissipated, any subsequent warrantless entry unrelated to determining the cause of the fire is unlawful. *See United States v. Hoffman,* 607 F.2d 280, 284–85 (9th Cir.1979).

The effect of the majority opinion is to create a new exception to the Fourth Amendment's requirement of a warrant. As long as one state agent is lawfully inside a private building, that state agent can authorize another state agent to come in later and seize property for a purpose different from that which led to the first agent's presence. The majority concludes that a defendant has no reasonable expectation of privacy for any physical area in which a state agent's initial presence was lawful. Presumably, this loss of a reasonable expectation of privacy is not permanent but, under the majority's view, continues at least as long as one state agent's presence on the property overlaps the later entries by other state agents for unrelated purposes.

The majority seeks to minimize the scope of the new exception by pointing to a nexus between the police and the firefighters, which, it is contended, is unlike a situation where, for example, a building inspector discovers contraband and calls police. Majority Opinion at 200 n. 5, 940 P.2d at 928 n. 5. But no nexus in fact exists here: the firefighters' purpose was to find the cause of the fire; the police officer and the DEB detective's purpose was to find the marijuana. The searches were entirely separate, requiring two separate justifications.

The majority's holding is at odds with the holding of the Ninth Circuit Court of Appeals in a case arising in Arizona, *United States v. Hoffman,* 607 F.2d 280 (9th Cir.1979). In *Hoffman,* Tucson firefighters responded to a fire in the defendant's trailer. Twenty-seven minutes after the fire was under control, Officer Heiden of the Tucson Police Department arrived on the scene. As Officer Heiden got out of his car, a fireman approached and told him that there was a sawed-off shotgun inside the trailer. Officer Heiden entered the trailer and seized the shotgun. The court held that the warrantless entry of the police officer after the firefighters' valid entry exceeded the scope of the initial intrusion by the firefighters and was illegal.

The disagreement between this court's majority and the Ninth Circuit lies primarily in contrary definitions of "scope of intrusion." The majority here allows police officers to intrude upon defendant's expectation of privacy as long as the intrusion is within the *physical* boundaries set by the firefighters' valid intrusion. In contrast, the Ninth Circuit Court of Appeals held:

> The fact that the officer's actual physical intrusion was not greater than that of the firemen does not control our examination of appellant's Fourth Amendment claims. The physical invasion of a property interest is not the essence of a Fourth Amendment violation. Rather, "the Fourth Amendment protects people not places." Fire victims do not abandon all reasonable expectations of privacy. One whose home is ablaze certainly should expect that firemen will enter in order to extinguish the fire. Likewise, one should also expect that these same firefighters will be looking for the source or cause of the fire while within the home. But, no citizen should reasonably expect that, because a fire has occurred in his home, and certain few officials may enter, any sort of public officer may thereafter invade his home for purposes unrelated to the initial intrusion.

*Hoffman,* 607 F.2d at 284–85 (citations omitted). The scope of intrusion allowed by the fire exigency is limited to putting out the fire and determining its cause. Thus, a police officer could have entered lawfully to put out the fire or assist in the arson investigation. But, if an officer intrudes upon a person's expectation of privacy for the sole purpose of seizing contraband unrelated to the fire, the officer has exceeded the scope of intrusion allowed by the fire exigency exception.

## II. Unlawful Seizure

The police officers could not seize the contraband under the "plain view" doctrine. To

invoke the plain view exception to the warrant requirement, the police officer must be lawfully in a position to view the object, its incriminating character must be immediately apparent; and the officer must have a lawful right of access to the object. *Minnesota v. Dickerson,* 508 U.S. 366, 373–77, 113 S.Ct. 2130, 2136–37, 124 L.Ed.2d 334 (1993); *State v. Millan,* 185 Ariz. 398, 402 n. 4, 916 P.2d 1114, 1118 n. 4 (App.1995); *see also State v. Apelt,* 176 Ariz. 349, 362, 861 P.2d 634, 647 (1993) (police can seize items in plain view if warrant authorized police's location and evidentiary value of item was immediately apparent). As the discussion above indicates, the officers had no lawful right of access to the marijuana.

The majority opinion proposes, however, that the *firefighters* could have seized the contraband under the "plain view" doctrine, and thus, the police officers merely need to "step into the shoes" of the firefighters and seize the contraband. In support of this proposition, the majority opinion cites to four cases where the courts found that the firefighters were authorized, under the plain view doctrine, to seize evidence unrelated to arson. Not coincidentally, in the majority of the cases cited, the firefighters were vested with statutory authority to exercise police powers.[1] Arizona arson investigators, on the other hand, are granted law enforcement powers of peace officers *only* to the extent necessary for the investigation, detection, and apprehension of persons who have violated or are suspected of violating the laws concerning arson. *See* A.R.S. §§ 9–500.01 and 41–2163(E). Because the firefighters have no authority to seize contraband unrelated to arson, the police cannot "step into their shoes" and seize the contraband.

In any event, discussion of the firefighters' statutory authority or lack thereof to seize the marijuana is moot for the simple reason that the firefighters neither seized nor attempted to seize the marijuana. Had they seized the marijuana, there would have been no occasion for the police to enter and seize it later. Furthermore, the majority fails to recognize that the police here seized bags of marijuana that were never even seen by the firefighters and could not have been, because the police had to move objects to find them. It is hard to imagine how the firefighters "seized" something they didn't know was there.

The majority does not rely solely on the "plain view" doctrine for the firefighters' authority to seize. It also relies on the firefighters' duty and authority to salvage property and prevent further damage. This authority includes removing property such as "refuse, garbage and things that have been burned up" to the outside to be picked up by a refuse company. Majority Opinion at 199, 940 P.2d at 927. Items that are not thrown away are covered up while the firefighters continue their "overhaul," that is, pulling down the ceiling and walls to ensure that the fire is completely extinguished.

Regardless of whether the firefighters could have placed the contraband outside the storage unit in plain view of the police officers, they, in fact, did not do so, nor was there any reason for them to do so. The firefighters who fought the fire put it out and left the scene without removing any of the property that was later seized by the police. Important constitutional issues should be resolved on the facts as they exist, not on hypotheticals that could have existed.

The information given to the police in this case is sufficient to establish probable cause. Nonetheless, according to the United States Supreme Court:

> [N]o amount of probable cause can justify a warrantless search or seizure absent 'exi-

---

1. *State v. Bell,* 108 Wash.2d 193, 737 P.2d 254, 260 n. 1 (1987) (Pearson, C.J., concurring) ("RCW 48.48.060(2) provides that fire marshals 'are vested with police powers to enforce the laws of this state.'"); *United States v. Green,* 474 F.2d 1385, 1389 (5th Cir.1973) (Fla.Stat.Ann. § 633.14 provides that "Agents of the state fire marshal shall have the same authority to … make searches and seizures, as the sheriff or his deputies."); *see United States v. Gargotto,* 476 F.2d 1009, 1012 (6th Cir.1973) (Court notes statute enacted after incident but before decision gave arson investigators "the general powers of peace officers for the enforcement of other offenses against the Commonwealth."). *But see People v. Harper,* 902 P.2d 842, 845–46 (Colo. 1995).

gent circumstances.' Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure.

*Coolidge v. New Hampshire,* 403 U.S. 443, 468, 91 S.Ct. 2022, 2039, 29 L.Ed.2d 564 (1971). The police officers saw the plants while standing outside the storage unit and were told that the plants were marijuana. Once the police officers had this information, the prudent and lawful next step was to secure a search warrant. Having failed to do so, their entry into the unit was illegal because the exigent circumstance had long since passed.

I agree with the majority that exigent circumstances are "those in which a substantial risk of harm to the persons involved or to the law enforcement process would arise if the police were to delay until a warrant could be obtained." Majority Opinion at 197, 940 P.2d at 925 (quoting *State v. Greene,* 162 Ariz. 431, 432, 784 P.2d 257, 258 (1989)). But there were no exigent circumstances here: the fire was extinguished, the marijuana was not going to rekindle the fire, and the evidence was not about to be destroyed. There was no substantial risk of harm to any person or to the law enforcement process which would justify a warrantless search.

Because no exigent circumstances existed at the time DEB detective Kozeliski entered the storage unit to seize the contraband, the entry and seizure of the evidence was unlawful. For that reason and for the further reason that the majority opinion adopts a rule for Arizona state courts at variance to that which must be followed by federal courts sitting in Arizona, *see Hoffman,* 607 F.2d at 282–85, I respectfully dissent.

ZLAKET, C.J., concurs.