NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

NICK ALBERT THOMAS, *Appellant.*

No. 1 CA-CR 16-0069
FILED 2-9-2017

Appeal from the Superior Court in Maricopa County
No. CR2014-137132-001 SE
The Honorable Erin O'Brien Otis, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael T. O'Toole
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Carlos Daniel Carrion
*Counsel for Appellant*

_____

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Jon W. Thompson joined.

_____

**W I N T H R O P**, Judge:

¶1        Nick Albert Thomas ("Appellant") appeals his conviction for production of marijuana. Appellant argues the trial court abused its discretion by denying his motion to suppress. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        In August 2014, the Mesa Fire Department dispatched firefighters to Appellant's residence in response to a fire. The Mesa Police Department was also dispatched to the residence.

¶3        When Fire Captain Derek Williams arrived at the scene, he saw that the residence contained two separate structures, a garage and a manufactured home, within close proximity of each other.[1] The home had an attached awning that extended outward and hung over the garage. Captain Williams observed heavy smoke and fire inside the garage. He also saw "heavy, black, pressurized smoke" underneath the awning.

¶4        While other firefighters were attempting to contain the fire in the garage, Captain Williams received an order to determine whether the fire had spread to the home and to check the home for potential victims.

¶5        As Captain Williams walked toward the home, Appellant approached him and stated that he was the homeowner and Captain Williams did not have permission to enter. Captain Williams told Appellant he had received an order to enter the home. Appellant again told Captain Williams he did not have permission to enter and also informed Captain Williams that he was a medical marijuana cardholder. When Captain Williams reiterated that he was going to enter the home, Appellant gave him the keys to enter.

_____

[1]     Captain Williams testified at the suppression hearing that the garage and home appeared to be separated by a distance of about six to ten feet.

¶6            As Captain Williams checked the home, he saw that part of one of the rooms was sectioned off, essentially creating a room within a room.[2] When Captain Williams looked inside the sectioned-off area, he saw what he believed were multiple marijuana plants growing in buckets.

¶7            After Captain Williams finished checking the home, he notified the other firefighters that the home was clear of victims and the fire had not spread.  He then informed Detective Edward Farrugia of the Mesa Police Department, who was at the scene conducting crowd control, that he saw marijuana plants inside the home.

¶8            Upon receiving the information from Captain Williams, Detective Farrugia contacted Appellant and asked Appellant if anything illegal was in the home.  Appellant stated that he was growing marijuana in his home and that he had a medical marijuana card.  Appellant showed Detective Farrugia his medical marijuana card, which had "Not Authorized to Cultivate" printed on the front of the card.

¶9            Detective Farrugia then asked Appellant for consent to search the home and Appellant refused.  A search warrant was subsequently obtained based on Appellant's admissions to Detective Farrugia and the information received from Captain Williams.  During the search of Appellant's home, Detective Farrugia found thirteen marijuana plants inside the sectioned-off room, which was functioning as a "large grow box." Detective Farrugia also found a number of smaller marijuana plants in a different room on the other end of the home.

¶10           Appellant was later indicted for production of marijuana, a class five felony.  Before trial, Appellant moved to suppress the evidence against him, arguing that Captain Williams' entry into his home violated the Arizona Constitution and the Fourth Amendment to the United States Constitution.

¶11           After an evidentiary hearing, the trial court denied Appellant's motion to suppress, finding that the exigent circumstances exception to the warrant requirement applied because "there was a potential for [the] fire to have spread from the garage to the [home]."

---

2       Captain Williams testified that he estimated the size of the sectioned-off area was between sixty-four and one hundred square feet.

**¶12**         The case proceeded to trial, where a jury found Appellant guilty as charged. The trial court suspended the imposition of sentence and placed Appellant on probation for a term of eighteen months.

**¶13**         Appellant filed a timely notice of appeal. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2003), 13-4031 (2010), and 13-4033(A) (2010).

## ANALYSIS

**¶14**         We review a trial court's ruling on a motion to suppress for an abuse of discretion if it involves a discretionary issue, but review *de novo* constitutional and legal issues. *State v. Moody*, 208 Ariz. 424, 445, ¶ 62, 94 P.3d 1119, 1140 (2004). In this review, we "consider only the evidence presented at the suppression hearing and view that evidence in the light most favorable to sustaining the trial court's ruling." *State v. Mitchell*, 234 Ariz. 410, 413, ¶ 11, 323 P.3d 69, 72 (App. 2014). We defer to the trial court's credibility determinations because that court is in the best position to observe the demeanor of the testifying witnesses. *See State v. Olquin*, 216 Ariz. 250, 252, ¶ 10, 165 P.3d 228, 230 (App. 2007).

### I.         *Initial Entry*

**¶15**         Appellant argues the trial court erred in finding that exigent circumstances justified Captain Williams' entry into his home. He contends that, because his home "was not threatened by the fire from the detached garage," Captain Williams did not have authority to enter over Appellant's objection.

**¶16**         A warrantless search of a home is *per se* unlawful in the absence of an established exception to the warrant requirement. *Jones v. United States*, 357 U.S. 493, 499 (1958); *State v. Ault*, 150 Ariz. 459, 463, 724 P.2d 545, 549 (1986). For example, the emergency aid doctrine is one exception that may justify a warrantless entry and serves "to ensure the safety and well-being of the public . . . ." *State v. Fisher*, 141 Ariz. 227, 240, 686 P.2d 750, 763 (1984), *abrogated on other grounds by State v. Wilson*, 237 Ariz. 296, 350 P.3d 800 (2015). The emergency aid doctrine "is triggered when the police enter a dwelling in the reasonable, good-faith belief that there is someone within in need of immediate aid or assistance." *Id.*

**¶17**         In contrast, the exigent circumstances exception generally applies where "a substantial risk of harm to the persons involved or to the law enforcement process would arise if the police were to delay until a

4

warrant could be obtained." *State v. Greene*, 162 Ariz. 431, 433, 784 P.2d 257, 259 (1989). Although exigent circumstances typically apply where "the delay necessary to obtain a warrant threatens the destruction of evidence," *Fisher*, 141 Ariz. at 240, 686 P.2d at 763, a fire in progress has been recognized as an exigent circumstance that justifies a firefighter's warrantless entry. *See Mazen v. Seidel*, 189 Ariz. 195, 197, 940 P.2d 923, 925 (1997) ("Exigent circumstances are one exception to the warrant requirement and include protective sweeps in response to a probable burglary in progress, a fire or medical emergency, and the likelihood that evidence will be destroyed."); *see also Michigan v. Tyler*, 436 U.S. 499 (1978) (stating "it would defy reason to suppose that firemen must secure a warrant or consent before entering a burning structure to put out the blaze").

¶18        Appellant maintains that Captain Williams' warrantless entry into his home was unlawful because Captain Williams "never assessed" the path of the fire to determine whether it extended to Appellant's home. He argues that, unlike *Mazen*, where the firefighters' warrantless entry into a storage unit was permissible because the firefighters had "determin[ed] the fire's path," here, no such investigation of the premises was made.[3]

¶19        The record, however, demonstrates otherwise. Captain Williams testified at the suppression hearing that, upon arriving at the residence, he observed that the fire in Appellant's garage was still in progress, emitting "heavy, black smoke" and "hot gases." He stated that the awning between Appellant's home and the garage was trapping the smoke from the fire, which prevented the gases from escaping and increased the potential for the fire to extend to the home. Additionally, Captain Williams explained there was a possibility the fire had extended to Appellant's home "without exterior visible cues." By going inside the manufactured home and using a thermal imager, Captain Williams could check for hot spots in the ceiling and walls to confirm whether the fire had spread. Therefore, contrary to Appellant's assertion, Captain Williams had

---

[3]        In *Mazen*, the owner of the storage unit conceded that the firefighters "had a right to enter his unit" because it shared a common attic space with another unit from which smoke was emanating. *See Mazen*, 189 Ariz. at 196, 940 P.2d at 924. Thus, the issue there was not whether the firefighters' entry was permissible, but whether the police officers' subsequent warrantless entry was lawful. *Id.*

sufficiently assessed the path or potential reach of the fire and had reasonably determined that entering Appellant's home was necessary.[4]

**¶20**         Appellant also attempts to distinguish *Mazen* on the basis that, in *Mazen*, the storage unit was in fact on fire, whereas here, "the mobile home was not on fire." This argument, which Appellant offers in hindsight, defies logic, however, because neither Captain Williams nor the other firefighters at the scene knew with certainty whether Appellant's home was on fire or at risk of catching fire until after Captain Williams completed the premises investigation. It was therefore necessary for Captain Williams to enter the home to make that determination.

**¶21**         Accordingly, the record reasonably supports a conclusion that Captain Williams' warrantless entry into Appellant's home was lawful under the exigent circumstances exception to the warrant requirement.[5] *See Mazen*, 189 Ariz. at 197, 940 P.2d at 925.

   *II.     Scope of the Search*

**¶22**         Appellant also argues that, even if Captain Williams' initial entry into his home was lawful, Captain Williams exceeded the permissible scope of the search by looking in the sectioned-off room that contained the marijuana plants.

**¶23**         "[A] warrantless search must be 'strictly circumscribed by the exigencies which justify its initiation.'" *Fisher*, 141 Ariz. at 239, 686 P.2d at 762 (quoting *Terry v. Ohio*, 392 U.S. 1, 26 (1968)). Here, the objective of

---

[4]     Captain Williams also testified that because he was part of the second fire engine company to arrive at Appellant's residence, Mesa Fire Department protocol required him to follow orders from the first fire engine company that had already taken command of the scene. Consequently, when the first fire engine company ordered Captain Williams to check Appellant's home, he was required to do so.

[5]     Captain Williams' testimony that he did not "have any verifiable means to make sure [Appellant] [was] the homeowner" and he "had no knowledge of whether somebody was in [the home]," also supports an argument that the emergency aid exception applies as well under these facts. *See Fisher*, 141 Ariz. at 240, 686 P.2d at 763. Although the State does not make this argument, "[w]e may affirm on any basis supported by the record." *See State v. Robinson*, 153 Ariz. 191, 199, 735 P.2d 801, 809 (1987).

Captain Williams' search was to ascertain whether the fire had spread to Appellant's home and whether any potential victims were inside. As Captain Williams systemically went through the home, he "rapidly assess[ed]" spaces "that could occupy a human being." Because the sectioned-off room containing the marijuana plants was large enough to accommodate a person, Captain Williams was justified in checking that room. *See cf. Maryland v. Buie*, 494 U.S. 325, 335 (1990) (stating that a protective sweep "may extend only to a cursory inspection of those spaces where a person may be found"). Consequently, our review of the record does not indicate Captain Williams' search extended beyond the scope of what the circumstances justified.

**CONCLUSION**

¶24        Appellant's conviction is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA