

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-18-00333-CR

———————————————————

CASEY ALLEN MARTIN, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 1
Tarrant County, Texas
Trial Court No. 1515753D

Before Kerr, Birdwell, and Bassel, JJ.
Opinion by Justice Birdwell

A fire broke out in appellant Casey Allen Martin's apartment, and firefighters entered to battle the blaze. Firefighters saw drug paraphernalia inside, and they called police in to observe the scene. Officers then obtained a search warrant, which led to the discovery of the methamphetamine that was the basis for Martin's conviction.

In one issue, Martin appeals the denial of his motion to suppress. Martin does not dispute that the fire permitted firefighters to enter the apartment. But he contends that the same exigent circumstances did not also authorize officers to enter and observe, in plain view, the same contraband that firefighters had already seen. Because we disagree, we affirm.

## I.    Background

On August 30, 2017, at approximately 10:47 p.m., the Bedford Fire Department ("BFD") was called to a fire at an apartment complex.[1] Firefighter Darren Cook located the source of the fire as an apartment on the second floor, with smoke and water flowing from the door. Cook contacted the tenant, Martin, who indicated that he fell asleep while cooking on the stove.

BFD made entry and extinguished a small fire on the cooktop. Cook then began efforts to ventilate the apartment. Cook attempted to open a window in the

---

[1] We draw our recitation of the facts from the trial court's findings, which are reasonably supported by the record. *See State v. Kerwick*, 393 S.W.3d 270, 274 (Tex. Crim. App. 2013).

back bedroom, kneeling on a futon to reach the window, and his knee touched a firearm. Cook became concerned about his safety and the safety of the other firefighters. The firefighters began to look around the apartment and observed other firearms and ammunition scattered throughout the apartment, giving Cook additional safety concerns. Cook also saw multiple items of drug paraphernalia sitting on dressers, tables, and a shelf in an open closet—all in plain view. Cook decided to call the police due to his safety concerns and the drug paraphernalia.

Officer Hunter Hart of the Bedford Police Department was dispatched to the scene. When Officer Hart arrived, he made contact with the BFD battalion chief. The chief told Officer Hart that BFD could not ventilate the back bedroom of the apartment because there were blankets over the windows and that BFD had located guns and drug paraphernalia inside the apartment. The chief told Officer Hart that he was concerned about the safety of BFD due to what they had observed, and he wanted Officer Hart to secure the apartment.

Officer Hart went into the apartment and inspected each room, ending with the back bedroom. In the bedroom, he observed drug paraphernalia in plain view. Officer Hart described the paraphernalia as a pipe or bong containing drug residue, a plastic baggie containing drug residue, and additional plastic baggies commonly used to contain narcotics. Based on the items of drug paraphernalia, Officer Hart believed that an offense had been committed, and he "froze" the apartment as a crime scene. Officer Hart exited the apartment approximately two minutes after his initial entry

and determined that there was no one inside who could pose a safety risk. BFD remained at the scene while Officer Hart entered and exited the apartment.

Additional officers went into the apartment to observe the contraband and to determine if they should obtain a search warrant for the apartment. The police did not seize any evidence at that time. The officers talked to Martin, who stated that he was the only one residing in the apartment. Martin was arrested for possession of drug paraphernalia.

Officer Hart then left the scene, and Bedford police obtained a search warrant at 3:12 a.m. on August 31, 2017. In the warrant affidavit, an officer alleged that Cook and BFD had located what they believed to be drug paraphernalia inside the residence. Police executed the search warrant and found the methamphetamine that is the subject of this case.

After hearing the evidence, the trial court denied suppression and entered findings of fact and conclusions of law. In its conclusions, the trial court stated that the firefighters' entry into the apartment was lawfully related to exigent circumstances: combatting an ongoing fire. The trial court observed that under Supreme Court precedent, the firefighters would have been within their rights to seize the drug paraphernalia that they saw in plain view.

The trial court also concluded that Officer Hart's entry was justified, though it noted that the Texas Court of Criminal Appeals had yet to address this issue. The trial court reasoned that firefighters should be permitted to call on officers to secure

4

the scene of a fire and to observe, in plain view, the same evidence that firefighters were entitled to seize. As support, the trial court cited cases from several other jurisdictions, and it noted that "the overwhelming majority of courts that have addressed this issue have concluded that the police may step into the shoes of the firefighter to seize the contraband without first obtaining a warrant." The trial court concluded that because both Cook's and Officer Hart's entries into the apartment were lawful under the Fourth Amendment, suppression should be denied.

Following denial of suppression, Martin pleaded guilty to possession of methamphetamine. The trial court deferred adjudication and placed Martin on community supervision for a period of seven years. Martin appeals the trial court's ruling, which we now consider. *See* Tex. R. App. P. 25.2(a)(2)(A).

## II. Discussion

Martin contends that the trial court erred by denying his motion to suppress.[2] Martin does not dispute that exigent circumstances permitted the firefighters' entry into the apartment and their efforts to control the fire. But he asserts that the same circumstances did not validate Officer Hart's entry, especially because the fire was doused before he arrived. Martin submits that despite the testimony regarding firearms, contraband, and the firefighters' safety concerns, there was no realistic

---

[2]To begin with, Martin offers three propositions that the State does not contest: (1) that even after the fire, he maintained a reasonable expectation of privacy in the apartment; (2) that the protective sweep doctrine does not apply; and (3) that he never provided consent to search his apartment. Because these arguments are not dispositive or contested, we do not address them further.

indication that some other form of exigency was afoot, such as an armed confrontation. Martin contends that because any remaining exigency was extinguished with the last flames, the officer's entry was unlawful. And because the entry was unlawful, Martin reasons, the methamphetamine must be suppressed as the fruit of an illegal search.

In response, the State asks us to adopt the rule applied by courts in many other jurisdictions: where a lawful intrusion by a firefighter has already occurred, and the firefighter has already observed contraband in plain view, the invasion of privacy is not increased by allowing an officer to enter the residence and observe or seize the contraband. We will oblige the State's request.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Lerma v. State*, 543 S.W.3d 184, 189–90 (Tex. Crim. App. 2018). At a motion to suppress hearing, the trial judge is the sole trier of fact and judge of credibility of witnesses and the weight to be given to their testimony. *Id.* at 190. Therefore, we afford almost complete deference to the trial court in determining historical facts. *Id.* When a trial judge makes express findings of fact, an appellate court must examine the record in the light most favorable to the ruling and uphold those fact findings so long as they are supported by the record. *State v. Rodriguez*, 521 S.W.3d 1, 8 (Tex. Crim. App. 2017). The appellate court then proceeds to a de novo determination of the legal significance of the facts as found by the trial

6

court—including the determination of whether a specific search or seizure was reasonable. *Id.*

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. In *Michigan v. Tyler*, the United States Supreme Court concluded that the protection against unreasonable search and seizure applies to fire officials. 436 U.S. 499, 509–10, 98 S. Ct. 1942, 1950 (1978).

The ultimate touchstone of the Fourth Amendment is "reasonableness." *Fernandez v. California*, 571 U.S. 292, 298, 134 S. Ct. 1126, 1132 (2014). A warrantless police entry into a person's home is presumptively unreasonable unless it falls within the scope of one of a few well-delineated exceptions to the warrant requirement. *Turrubiate v. State*, 399 S.W.3d 147, 151 (Tex. Crim. App. 2013); *Johnson v. State*, 226 S.W.3d 439, 443 (Tex. Crim. App. 2007). This general rule applies equally to fire-damaged property "unless the fire is so devastating that no reasonable privacy interests remain in the ash and ruins." *Garrison v. State*, Nos. 2-04-450-CR, 2-04-451-CR, 2005 WL 1594258, at *2 (Tex. App.—Fort Worth July 7, 2005, pets. ref'd) (not designated for publication).

One well-recognized exception applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment. *Missouri v. McNeely*, 569 U.S.

141, 148–49, 133 S. Ct. 1552, 1558 (2013); *see Payton v. New York*, 445 U.S. 573, 590, 100 S. Ct. 1371, 1382 (1980) ("[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant."). "A variety of circumstances may give rise to an exigency sufficient to justify a warrantless search, including law enforcement's need to provide emergency assistance to an occupant of a home . . . or enter a burning building to put out a fire and investigate its cause." *McNeely*, 569 U.S. at 149, 133 S. Ct. at 1558–59. Moreover, the exigent circumstances created by a fire are not extinguished the moment the fire is put out. *See Tyler*, 436 U.S. at 510, 98 S. Ct. at 1950; *Johnson*, 226 S.W.3d at 446 n.29. Rather, "the exigent circumstances warranting intrusion by government officials continue for a reasonable time after the fire has been extinguished to allow fire officials to fulfill their duties, including making sure the fire will not rekindle, and investigating the cause of the fire." *Jones v. Commonwealth*, 512 S.E.2d 165, 168 (Va. Ct. App. 1999) (citing *Tyler*, 436 U.S. at 510, 98 S. Ct. at 1950). The determination of what constitutes a reasonable time to investigate varies according to the circumstances of a particular fire. *Tata v. State*, 446 S.W.3d 456, 467 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (citing *Tyler*, 436 U.S. at 510 n.6, 98 S. Ct. at 1950 n.6).

If evidence of criminal activity is discovered by firefighters during the course of a lawful search under exigent circumstances, firefighters may seize it under the plain view doctrine. *Michigan v. Clifford*, 464 U.S. 287, 294, 104 S. Ct. 641, 647 (1984).

8

Three requirements must be met to justify the seizure of an object in plain view: (1) law enforcement officials must lawfully be where the object can be "plainly viewed"; (2) the "incriminating character" of the object in plain view must be "immediately apparent" to the officials; and (3) the officials must have the right to access the object. *State v. Betts*, 397 S.W.3d 198, 206 (Tex. Crim. App. 2013).

Here, it is undoubted that the firefighters' entry into and conduct within the apartment was permissible under the Fourth Amendment. The exigency of the fire gave the firefighters passage into Martin's apartment. That exigency continued for a reasonable time after the fire had been extinguished to allow Cook and other firefighters to fulfill their duty to ventilate the apartment and to ensure the fire was out for good. *See Tyler*, 436 U.S. at 510, 98 S. Ct. at 1950. While ventilating the apartment, Cook encountered contraband in plain view. Therefore, Cook certainly could have seized the paraphernalia and taken it to the police station, or simply handed it to officers outside the apartment. *See Clifford*, 464 U.S. at 294, 104 S. Ct. at 647.

The question remains whether the officers' entry also passes constitutional muster. "Of those jurisdictions that have considered the question, a majority has held that law enforcement officers may enter premises to seize contraband that was found in plain view by firefighters or other emergency personnel, at least if the exigency is continuing and the emergency personnel are still lawfully present." *State v. Bower*, 21 P.3d 491, 496 (Idaho Ct. App. 2001), *abrogated in part on other grounds by State v. Islas*,

9

No. 45174, 2019 WL 1053379, at *6 (Idaho Ct. App. Mar. 6, 2019); *see Steigler v. Anderson*, 496 F.2d 793, 797–98 (3d Cir. 1974); *United States v. Green*, 474 F.2d 1385, 1390 (5th Cir. 1973); *Mazen v. Seidel*, 940 P.2d 923, 927–28 (Ariz. 1997); *People v. Harper*, 902 P.2d 842, 846 (Colo. 1995); *State v. Eady*, 733 A.2d 112, 123 (Conn. 1999) (op. on reh'g); *Hazelwood v. Commonwealth*, 8 S.W.3d 886, 887 (Ky. Ct. App. 1999); *Commonwealth v. Person*, 560 A.2d 761, 765 (Pa. Super. Ct. 1989); *Jones*, 512 S.E.2d at 168–69; *State v. Bell*, 737 P.2d 254, 259 (Wash. 1987), *abrogated in part on other grounds by Horton v. California*, 496 U.S. 128, 110 S. Ct. 2301 (1990).

In our view, such a rule is well founded. "Police officers often fill many roles, including paramedic, social worker, and fire investigator." *Mazen*, 940 P.2d at 928. When those roles overlap the role of criminal investigator, it is not unreasonable to allow officers "to step into the shoes of" the firefighter to observe and to seize the contraband without first obtaining a warrant. *Id.* Allowing this limited entry by an officer constitutes no greater intrusion upon the defendant's privacy interest than does a firefighter's entry. *Green*, 474 F.2d at 1390; *Eady*, 733 A.2d at 120; *Bower*, 21 P.3d at 496; *Jones*, 512 S.E.2d at 168. Under such circumstances, it would impose needless inconvenience and danger—to the firefighter, the officer, and the evidence— to require suspension of activity while a warrant is obtained. *Eady*, 733 A.2d at 120. Firefighters' efforts are best devoted to fighting fire and sorting the aftermath, which are within their mission and core expertise. When, as here, the presence of firearms

10

and contraband distracts from that mission, firefighters should be permitted to call upon police, whose expertise includes handling firearms and securing contraband.[3]

We note that a contrary rule is stated by two courts: *United States v. Hoffman*, 607 F.2d 280, 283–85 (9th Cir. 1979), and *State v. Bassett*, 982 P.2d 410, 419 (Mont. 1999). These courts held that firefighters may not call police into the scene of a fire to witness or seize contraband without first observing the warrant requirement.

As support, these courts offered two rationales. First, these courts rejected the notion that a police officer may legitimately "step into the shoes" of a firefighter because the firefighter and the police officer entered burned houses for two entirely separate reasons. *See, e.g.*, *Bassett*, 982 P.2d at 418. The firefighters entered the home to extinguish the fire, to clean up, and to ensure that the fire did not reignite. *Id.* But the police officer entered solely to seize criminal evidence unrelated to the fire. *Id.* The *Bassett* court held that because there were "two separate reasons for entering the house, . . . there thus must be two entirely separate justifications for each entry." *Id.*; *see Hoffman*, 607 F.2d at 284–85 (concluding that an officer's entry was not a "mere extension" of the firefighter's entry in part because the officer's "only purpose in entering appellant's trailer . . . was to seize evidence of an unrelated federal crime").

We disagree with this line of reasoning. It is well established that an officer's subjective reasons for acting are irrelevant in determining whether that officer's

---

[3]This cause presents an even stronger case for the application of the majority rule, for in addition to contraband, firefighters faced safety concerns from the presence of several firearms.

actions violate the Fourth Amendment. *Brigham City, Utah v. Stuart*, 547 U.S. 398, 404, 126 S. Ct. 1943, 1948 (2006). "[T]he issue is not his state of mind, but the objective effect of his actions . . . ." *Id.* at 398, 126 S. Ct. at 1948 (quoting *Bond v. United States*, 529 U.S. 334, 338 n.2, 120 S. Ct. 1462, 1465 n.2 (2000)). Because this rationale would instead make an officer's subjective motivation a paramount concern, we must respectfully part ways with our brethren in Montana and the Ninth Circuit.

As a second rationale, these courts have emphasized that simply because a fire official has lawfully entered, this should not create a permanent license for "any sort of public officer [to] thereafter invade his home." *Hoffman*, 607 F.2d at 285; *see Bassett*, 982 P.2d at 417. We agree with this logic, which under the majority rule has been fashioned into a limitation forbidding subsequent searches after police and fire officials have left the scene. *See Clifford*, 464 U.S. at 293, 104 S. Ct. at 647; *Mazen*, 940 P.2d at 928; *Bower*, 21 P.3d at 497; *cf. Bray v. State*, 597 S.W.2d 763, 768 (Tex. Crim. App. [Panel Op.] 1980) (holding that warrantless search of apartment's bathroom conducted by police officer, who entered premises after fire department personnel informed officer that there was no immediate danger and left the scene, was not justified by emergency doctrine).

However, this limitation was not exceeded here. Firefighters were on the scene working when Officer Hart arrived, and they asked him to secure the apartment. When Officer Hart's initial investigation concluded two minutes later, firefighters remained on the scene waiting for his report. Though the fire had subsided, the

aftermath of a fire often presents exigencies that will not tolerate the delay necessary to obtain a warrant. *Clifford*, 464 U.S. at 293, 104 S. Ct. at 647. The same exigency continued for a reasonable time to allow firefighters to complete their duties, and it was within this window that Officer Hart conducted his investigation. *See Tyler*, 436 U.S. at 510, 98 S. Ct. at 1950.

Nor did Officer Hart violate another limitation: multiple courts have held that when an officer steps into a firefighter's shoes, the officer must not exceed the boundaries of the original entry or undertake a general search of the premises. *See Mazen*, 940 P.2d at 929; *Eady*, 733 A.2d at 120; *Bower*, 21 P.3d at 497; *Jones*, 512 S.E.2d at 169; *Bell*, 737 P.2d at 259. During Officer Hart's initial entry, he surveyed the main areas of the apartment and opened a hallway door. He then proceeded to the back bedroom to observe the paraphernalia in plain view, just as the firefighters had done, and he exited the apartment just as quickly as he entered. Thus, he remained within the bounds of the firefighters' original entry.

Because the officer's intrusion did not exceed that of the emergency personnel who were still on the scene, Martin suffered no additional injury to his privacy interest due to the officer's entry. *See Bower*, 21 P.3d at 497. Therefore, Officer Hart "cannot be constitutionally tripped up at the threshold"; he must be allowed to step into Cook's shoes and make the same plain-view observation that Cook was entitled to make. *See Eady*, 733 A.2d at 122 n.16 (quoting *Green*, 474 F.2d at 1390). We conclude

13

that Officer Hart's entry into the apartment was lawful under the Fourth Amendment.

We therefore overrule Martin's first and only issue.

### III. Conclusion

We affirm the judgment of the trial court.

/s/ Wade Birdwell

Wade Birdwell
Justice

Publish

Delivered:  May 16, 2019